Tyrone Keith LEDAY, Appellant,

v.

The STATE of Texas.

No. 1125–97

Court of Criminal Appeals of Texas,
En Banc.

Dec. 16, 1998.

714

Donald W. Rogers, Jr., Houston, for appellant.

1. *See* Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1 (Health & Safety Code § 481.115(d)(1)), 1989 Tex. Gen. Laws 2937, *amended by* Act of

Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, Matthew Paul, State's Atty., Austin, for State.

## OPINION

WOMACK, J., delivered the opinion of the Court, in which OVERSTREET, MEYERS, MANSFIELD, PRICE, and HOLLAND, JJ., joined.

This case calls for us to reconsider the effect of a defendant's admissions of guilt at the guilt stage and at the punishment stage of a bifurcated trial—the so-called "curative admissibility" and "*DeGarmo*" doctrines.

### I.

The appellant was indicted for possession of 28 grams or more of cocaine, a felony which at the time of the offense (November 24, 1993) was punishable by confinement for life or a term of 5 to 99 years and a fine not to exceed $50,000.[1] His motion to suppress the cocaine and testimony about it, on grounds of unlawful search and seizure, was denied. The appellant pleaded not guilty, and the case was tried before a jury.

The State presented the evidence that the appellant had sought to suppress: The appellant was the passenger in a vehicle which a deputy constable stopped for speeding. The officer's dog, which was trained to detect narcotics, began barking in the officer's car. The driver asked if the dog would bite someone who had cocaine on their person. The officer said no. The driver asked the officer to take a bag out of her coat pocket in such a way that the appellant could see that she was not giving it willfully. The bag contained about 124 grams of "crack" cocaine. The driver and the appellant were arrested and taken to the constable's office. After talking to the driver, the officer searched the appellant's shoes and found about 28 more grams of "crack" cocaine.

After the State rested, the appellant testified that a long-time acquaintance in Dubach, Louisiana had given him $800 to go with the driver on a "drug run" to Houston. They

June 19, 1993, 73d Leg., R.S., ch. 900, § 2.02, 1993 Tex. Gen. Laws 3707.

went to a McDonald's where he gave a woman $9,800 and obtained the cocaine. The appellant was aware that he had the packages of cocaine in his shoes, but not that the driver had cocaine. He agreed with the prosecutor that he was not telling the jury that he was not guilty, but that he took issue with how the evidence was recovered. His testimony about the stop of the vehicle and the searches and arrests was different from that of the officers.

The jury was charged to disregard the evidence found in the search of the appellant if they had a reasonable doubt that the vehicle was properly stopped or that the officer had probable cause to arrest the appellant. *See* Code of Criminal Procedure article 38.23. The verdict was "guilty."

At the punishment stage of the trial, the appellant testified that he agreed to do the "drug run" for money he could use to repay a student loan. The jury assessed a punishment of 20 years' confinement and a $20,000 fine.

On appeal the appellant argued in two points that the trial court erred in admitting the cocaine over his motion to suppress. In a supplemental brief, filed after the State's brief, the appellant argued that his testimony was impelled by the illegal action of the State. The court of appeals said:

> The record before us indicates appellant took the witness stand during both the guilt/innocence phase and the punishment phase. At both phases, appellant admitted to being in intentional and knowing possession of the contraband in question. Under the *DeGarmo* doctrine, which was reaffirmed in *McGlothlin v. State*, 896 S.W.2d 183, 186 (Tex.Crim.App.), *cert. denied*, 516 U.S. 882, 116 S.Ct. 219, 133 L.Ed.2d 150 (1995), any error occurring at the guilt/ innocence phase of the trial is deemed to be waived if the defendant admits his guilt to the charged offense during the punishment phase of the trial. We carried the *DeGarmo* doctrine a step further in *McWhorter v. State*, 911 S.W.2d 538, 540 (Tex.App.—Beaumont 1995, no pet.), holding that a defendant's admission to the offense during the guilt/innocence phase of the trial also waives any error occurring

> during that portion of the trial. In the instant case, having admitted to knowing possession of the cocaine in question during both phases of the trial, any error that occurred during the guilt/ innocence phase was waived. Points of error one and two are overruled.

*Leday v. State*, No. 09–95–361–CR, 1997 WL 354770 (Tex.App.—Beaumont, June 25, 1997) (unpublished) (footnotes omitted).

We granted the appellant's petition for discretionary review to consider whether the appellant "waived error" under the "*DeGarmo* doctrine." *See DeGarmo v. State*, 691 S.W.2d 657 (Tex.Cr.App.), *cert. denied*, 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985).

## II.

■ One question is common to the issues before us: how is the review of appellate points that complain of the admission of evidence affected by other evidence that was received without objection? Analysis of these issues is made more difficult by the terminology we have used; we have used the same term to refer to different situations, and different terms to refer to identical situations. We are not unique in these failings, which affect even academic writers.

> Once the objector has made a timely, specific objection of record in compliance with [Federal] Rule [of Evidence] 103(a)(1), he has done all the Rules require to preserve the point for review. There are, however, a number of doctrines that an opponent may dredge up from the books to defeat review, despite compliance with the Rule. In considering the vitality of these doctrines, analysis must be quite tentative for there is little agreement among commentators on the nomenclature, much less the substantive effect of these doctrines. They are variously referred to as "waiver," "estoppel," "opening the door," "fighting fire with fire," and "curative admissibility."

21 Charles Alan Wright & Kenneth W. Graham, *Federal Practice & Procedure* § 5039 (1977).

We have gone the commentators one better (or worse) by using "waiver" not only to

refer to doctrines that defeat review of a ruling on a timely, specific objection, but also to refer to the failure to make a timely, specific objection. *See, e.g., Lagrone v. State,* 942 S.W.2d 602, 618 (Tex.Cr.App.1997); *McCain v. State,* 139 Tex.Crim. 539, 141 S.W.2d 613, 616 (1940). As we shall explain below, "waiver" is not the best term to use in this area, although it has its academic defenders.

We also have muddied the waters by misusing the term "curative admissibility." *See* Steven Goode, Olin Guy Wellborn, III, & M. Michael Sharlot, 1 *Texas Practice—Guide to the Texas Rules of Evidence, Civil and Criminal* § 103.1 (2d ed.1993). In the common law of evidence, the doctrine of curative admissibility allows one party to introduce evidence that might otherwise be excluded, to counter the unfair prejudicial use of the same evidence by the opposing party. 21 Charles Alan Wright & Kenneth W. Graham, *Federal Practice & Procedure* § 5039 n. 4 (1977). In his *Treatise on Evidence* § 15 (3d ed.1940), Wigmore stated the issue that underlies the doctrine of curative admissibility:

> Does one inadmissibility justify or excuse another? If the one party offers an inadmissible fact which is received, may the opponent afterwards offer similar facts whose only claim to admission is that they negative or explain or counter-balance the prior inadmissible fact?

In such a situation, the admissibility of the opponent's evidence is based on the need to cure the earlier error in receiving evidence—literally, "curative admissibility." McCormick used the homelier terms, "fighting fire with fire" and "opening the door." *See McCormick on Evidence* § 57 (3d ed.1972).

Thus, the doctrine of curative admissibility, correctly identified, is closely related to the doctrine of optional completeness codified in Texas [Rule of Evidence] 107. Curative admissibility, as the term itself suggests, is a doctrine of admissibility, not of harmless error. In the cases where the Court of Criminal Appeals misuses the term, admissibility of the defendant's responsive evidence is not challenged. If it

were, the true doctrine of curative admissibility would apply and provide admissibility. The issue in these cases is whether the evidence presented by the defendant in response to inadmissible evidence improperly admitted over his objection has the effect of rendering the error harmless, or of "waiving" it. This is a matter quite distinct from curative admissibility.

Steven Goode *et al., supra,* at 12. Since the rule of harmless error (or "waiver") in admitting evidence is quite different from the common law doctrine of curative admissibility, how is it that we gave the former rule the latter name?

So far as we can tell, the first use by a Texas appellate court of the term "curative admissibility" was in *Thomas v. State,* 572 S.W.2d 507, 513 (Tex.Cr.App.1978):

> It has long been the rule of this state that the admission of improper evidence cannot be urged as grounds for reversal where the defendant gives testimony on direct examination which establishes the same facts as those objected to. [Citations omitted.] This principle is sometimes referred to as the doctrine of curative admissibility. 5A C.J.S. Appeal and Error § 1724[ (c) ](3)(b) at 954 (1958).

At the cited page of *Corpus Juris Secundum* is a black-letter statement of law which supports the rule stated in the *Thomas* opinion: "The conduct of parties or counsel may be such as to render error in admitting evidence harmless, as where the party complaining introduces, or fails to object to the admission of, improper evidence." And just under that black-letter statement, the words "curative admissibility" do appear as a boldface catchline in a long footnote. But the footnote is to a preceding section of the article, not to the section that contains the relevant rule. It therefore seems likely that the misuse of the term "curative admissibility" to describe this rule stems from a misreading of the cited page in the legal encyclopedia.

We disapprove the mistaken use of the term "curative admissibility" in our opinions[2]

**2.** *See McGlothlin v. State,* 896 S.W.2d 183, 186 (Tex.Cr.App.1995); *Stoker v, State,* 788 S.W.2d 1,

12 (Tex.Cr.App.1989);*Valcarcel v. State,* 765 S.W.2d 412, 417 (Tex.Cr.App.1989); *Brown v.*

and in the opinions of the courts of appeals,[3] when it has been misapplied in cases in which error in admitting evidence has been held to be harmless (or "waived") because similar evidence was introduced without objection.

Our disapproval of the use of a term such as "curative admissibility" or "waiver" in an opinion does not imply that the doctrine so named was unsound or misapplied. We are mindful that the soundness of any of these doctrines depends, not on the label that it bears, but on the specific situation in which it is used. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 175 n. 2, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (opinion of Rehnquist, C.J.).[4]

## III.

One such situation in which the doctrine of harmless error (or "waiver") is used is a court's overruling an objection to evidence after the same evidence has been admitted without objection. The effect of the earlier-admitted evidence on appellate review of the ruling is clear: Overruling the objection usually will not be reversible error. "It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." *Crocker v. State*, 573 S.W.2d 190, 201 (Tex.Cr.App.1978) (declining to address admissibility of a psychiatrist's opinion after a psychologist had given similar opinion without objection).

The converse situation leads to the same result. That is, when a court has overruled an objection to evidence, the ruling usually will not be reversible error when the same evidence is subsequently admitted without objection. *See, e.g., Massey v. State*, 933 S.W.2d 141, 149 (Tex.Cr.App.1996). In requiring an objection every time the objectionable evidence is offered, we are in a minority

---

*State*, 757 S.W.2d 739, 741 n. * (Tex.Cr.App. 1988); *Wicker v. State*, 740 S.W.2d 779, 788 (Tex.Cr.App.1987); *Cantrell v, State*, 731 S.W.2d 84, 93 (Tex.Cr.App.1987); *Nehman v. State*, 721 S.W.2d 319, 324 (Tex.Cr.App.1986); *Moraguez v. State*, 701 S.W.2d 902, 904–05 (Tex.Cr.App. 1986); *Bush v. State*, 697 S.W.2d 397, 403 (Tex. Cr.App.1985); *Sweeten v. State*, 693 S.W.2d 454, 456 (Tex.Cr.App.1985); *Maynard v. State*, 685 S.W.2d 60, 65 (Tex.Cr.App.1985); *Sherlock v. State*, 632 S.W.2d 604, 606 (Tex.Cr.App.1982); *Howard v. State*, 599 S.W.2d 597, 603 (Tex.Cr. App.1980); *Benavides v. State*, 600 S.W.2d 809, 812 (Tex.Cr.App.1980); *Pemberton v. State*, 601 S.W.2d 333, 335 (Tex.Cr.App.1979); *Evers v. State*, 576 S.W.2d 46, 48 (Tex.Cr.App.1978); *Thomas v. State*, 572 S.W.2d 507, 512 (Tex.Cr. App.1976).

3. *See Aguilar v. State*, 980 S.W.2d 824, 826 (Tex. App.—San Antonio, 1998); *Hyde v. State*, 970 S.W.2d 81, 85 (Tex.App.—Austin 1998); *Fierro v. State*, 969 S.W.2d 51, 56 (Tex.App.—Austin 1998); *Raney v. State*, 958 S.W.2d 867, 878 n. 8 (Tex.App.—Waco 1997, pet. granted); *Smith v. State*, 957 S.W.2d 881, 883 (Tex.App.—Texarkana 1997); *Smith v. State*, 959 S.W.2d 1, 13 (Tex.App.—Waco 1997, pet. ref'd); *Rodriguez v. State*, 919 S.W.2d 136, 138 (Tex.App.—San Antonio 1995, no pet.); *McWhorter v. State*, 911 S.W.2d 538, 539 (Tex.App.—Beaumont 1995, no pet.); *Thomas v. State*, 923 S.W.2d 645, 649 (Tex.App.—Houston [1st Dist.] 1995, no pet.); *Hilliard v. State*, 881 S.W.2d 917, 920 (Tex. App.—Fort Worth 1994, no pet.); *McGlothlin v. State*, 866 S.W.2d 70, 72 (Tex.App.—Eastland 1993), *aff'd*, 896 S.W.2d 183 (Tex.Cr.App.1995); *Rivas v. State*, 855 S.W.2d 777, 779 (Tex.App.—

El Paso 1993, no pet.); *Murillo v. State*, 839 S.W.2d 485, 493 (Tex.App.—El Paso 1992, no pet.); *Morin v. State*, 800 S.W.2d 328, 330 n. 1 (Tex.App.—Corpus Christi 1990, no pet.); *Haley v. State*, 788 S.W.2d 892, 896 (Tex.App.—Houston [14th Dist.] 1990), *rev'd*, 811 S.W.2d 597 (Tex.Cr.App.1991); *Miller v. State*, 786 S.W.2d 494, 496 (Tex.App.—San Antonio 1990, no pet.); *Dowler v. State*, 777 S.W.2d 444, 449 (Tex.App.—El Paso 1989, pet. ref'd); *Verell v. State*, 749 S.W.2d 197, 200 (Tex.App.—Fort Worth 1988, pet. ref'd); *Nehman v. State*, 742 S.W.2d 102, 102 (Tex.App.—Fort Worth 1987, no pet.); *Liveoak v, State*, 717 S.W.2d 691, 695 (Tex.App.—San Antonio 1986, pet. ref'd); *Wortham v. State*, 704 S.W.2d 586, 589 (Tex.App.—Austin 1986, no pet.); *Moseley v. State*, 696 S.W.2d 934, 936 (Tex.App.—Dallas 1985, pet. ref'd); *Sanchez v. State*, 691 S.W.2d 797, 798 (Tex.App.—El Paso 1985), *rev'd*, 745 S.W.2d 353 (Tex.Cr.App.1988); *Flores v. State*, 681 S.W.2d 94, 96 (Tex.App.—Houston [14th Dist.] 1984), *aff'd*, 690 S.W.2d 281 (Tex.Cr.App.1985); *Wallace v. State*, 648 S.W.2d 377, 378 (Tex.App.—San Antonio 1983, no pet.); *Rodriguez v, State*, 644 S.W.2d 200, 205 (Tex. App.—San Antonio 1982, no pet.); *Martinez v. State*, 645 S.W.2d 322, 324 n. 1 (Tex.App.—Corpus Christi 1982, no pet.).

4. "According to 21 C. Wright & K. Graham, FEDERAL PRACTICE AND PROCEDURE § 5039, p. 199 (1977) one doctrine which allows even a valid and timely objection to be defeated is variously known as 'waiver,' 'estoppel,' 'opening the door,' 'fighting fire with fire,' and 'curative admissibility.' The doctrine's soundness depends on the specific situation in which it is used and calls for an exercise of judicial discretion." *Ibid*.

of courts which do not follow the general rule that the repetition of an objection is needless when the court's ruling has indicated that an objection to such evidence will definitely be overruled. *See Wigmore on Evidence* § 18 (Peter Tillers rev.1983). Our rule which requires objection to every offer is sometimes called "the 'futility rule'; that is, despite ruling of judge that evidence is admissible, party must keep making futile objections on pain of waiver." 21 Charles Alan Wright & Kenneth W. Graham, *Federal Practice & Procedure* § 5039 n. 11.1 (Supp.1998) (citing Texas cases).[5] We have found that the general application of this rule has not proven to be burdensome for defense counsel in many cases. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Cr.App.1991).

■ Our rule, therefore, is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the other evidence was introduced by the defendant or the State. *See, e.g., Rogers v. State,* 853 S.W.2d 29, 35 (Tex.Cr.App.1993); *Stoker v. State,* 788 S.W.2d 1, 12 (Tex.Cr.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). The rule has never been otherwise, so far as we know. In *Wagner v. State,* 53 Tex. Crim. 306, 307, 109 S.W. 169, 169 (1908), we said, "It is well settled in this state that the erroneous admission of testimony is not cause for reversal, if the same fact is proven by other testimony not object-

ed to. See .... *West v. State,* 2 Tex.App. 460 [1877] ....."

■ The cases and treatises are not clear whether this result is based on a concept of waiver, or on the theory that any error in the ruling is rendered harmless. *See Jones v. State,* 843 S.W.2d 487, 493 (Tex.Cr.App.1992) (observing that Court has held that defendant's testimony waives error and that defendant's testimony makes error harmless). *Compare, e.g., Narvaiz v. State,* 840 S.W.2d 415, 430 (Tex.Cr.App.1992),[6] *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993), *with, e.g., Anderson v. State,* 717 S.W.2d 622, 628 (Tex.Cr.App.1986).[7] *See generally* 21 Charles Alan Wright & Kenneth W. Graham, *Federal Practice & Procedure* § 5039 (1977).[8] It seems doubtful that a waiver of an objection was intended in all cases in which a defendant objects to some but not all of the State's evidence of a fact—at least in the sense that "waiver" is often used in criminal litigation. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). But when a defendant offers the other evidence, we have recognized exceptions to the rule which are appropriate to a rule of waiver. Two of these exceptions apply in this case.[9]

■ One exception is that the defendant's testimony, which constituted other evidence of the fact that was proved over the defendant's objection, was impelled by the State's introduction of evidence that was ob-

**5.** It is not clear whether this rule always applies in civil cases. *Compare Richardson v. Green,* 677 S.W.2d 497, 501 (Tex.1984) (futility rule), *with, e.g., Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 242 (Tex.App.—Corpus Christi 1994, writ denied) (majority rule applies on case-by-case basis).

**6.** The *Narvaiz* opinion went so far as to omit the words "rendered harmless" from the following quotation:

"[T]he general rule is well established in both civil and criminal cases that an error in admitting evidence may be rendered harmless or waived if the aggrieved party himself introduces evidence to the same effect, or permits the opponent to do so at another point in the trial without objection." Steven Goode, Olin Guy Wellborn, III, & M. Michael Sharlot, 1

TEXAS PRACTICE—GUIDE TO THE TEXAS RULES OF EVIDENCE, CIVIL AND CRIMINAL 10 (1988).
*See Narvaiz v. State,* 840 S.W.2d at 430.

**7.** "Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proved the same fact that the inadmissible evidence sought to prove." *Ibid.*

**8.** "McCormick says that 'of course he has waived the objection.' With all due respect, he has done no such thing. The objection is still good, but the error was harmless." *Ibid.*

**9.** Another exception to the rule of waiver, which is not involved in this case, is that a defendant may respond to "evidence of an extraneous offense" admitted over objection. *Maynard v. State,* 685 S.W.2d 60, 66 (Tex.Cr.App.1985).

tained in violation of the law. *See Sweeten v. State,* 693 S.W.2d 454 (Tex.Cr.App.1985); *Thomas v. State,* 572 S.W.2d 507 (Tex.Cr. App.1978). The reason for this exception is that if the defendant's decision to testify was made in order to overcome the impact of such evidence, the testimony is tainted by the same illegality as was the prosecution's evidence. *Sweeten v. State,* 693 S.W.2d at 457 (quoting *Harrison v. United States,* 392 U.S. 219, 223, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968)); *Thomas v. State,* 572 S.W.2d at 516 (same). This exception, we believe, would extend to all evidence subject to exclusion under Code of Criminal Procedure article 38.23.[10] To remove itself from this exception, the State has the burden to show that its illegal action did not impel the defendant's testimony. *Sweeten v. State,* 693 S.W.2d at 458–59; *Sherlock v. State,* 632 S.W.2d 604, 606–07 (Tex.Cr.App.1982). In determining whether the State met its burden the following factors are relevant:

(1) evidence that defendant's counsel would not have called [the] client to the stand but for the overruling of [the defense] objection to illegally obtained evidence;

(2) even if [defendant's counsel] would have called the defendant to the stand, evidence that [the] client would have testified in the same manner but for the introduction of that evidence;

(3) whether the State introduced other evidence of guilt, and the strength of that evidence; and,

(4) whether there is other evidence, aside from the evidence objected to, that

would have induced the defendant to testify in the same manner.

*Sherlock v. State,* 632 S.W.2d at 607.

■ The other exception which is applicable to this case is that the harmful effect of improperly admitted evidence is not cured by the fact that the defendant sought to meet, destroy, or explain it by introducing rebutting evidence. *Thomas v. State,* 572 S.W.2d at 512. This exception appeared in our law over a century ago. *See id.* at 513.

■ The Court of Appeals' holding that, when the appellant took the stand to prove that the evidence against him was illegally seized, he waived his objection that the evidence was illegally seized, contravenes these exceptions. It creates for defendants a cruel trilemma of waiver, perjury, or loss of rebuttal evidence.

One of these exceptions is based on a public policy first declared in 1925 when article 38.23 was enacted[11]—a policy that illegally obtained evidence should not be received in criminal trials, and that the jury which decides guilt also should decide the issues of fact about the legality of the State's evidence. Four other legislatures, and four other governors, have reenacted the statute.[12] It has been slightly amended, but the basic policy has never changed. A judicially created doctrine of waiver should not negate that public policy.

We also believe that, as a matter of logic, neither exception should be subjected to a doctrine that a party waives an error in the admission of evidence by rising to rebut the evidence.

---

**10.** "Art. 38.23. Evidence not to be used
  "(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. "In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.
  "(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence

was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause."

**11.** Act of March 9, 1925, 39th Leg., R.S., ch. 49, § 1, 1925 Tex. Gen. Laws 186.

**12.** Act of June 28, 1929, 41st Leg., 2d C.S., ch. 45, § 1, 1929 Tex. Gen. Laws 79; Act of June 4, 1953, 53d Leg., R.S., ch. 253, § 1, 1953 Tex. Gen. Laws 669; Act of June 18, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws, vol. 2, p. 470; Act of June 18, 1997, 76th Leg., R.S., ch. 546, § 1, 1987 Tex. Gen. Laws 2207.

We hold that the Court of Appeals erred in deeming the appellant's point of error waived by his testimony at the guilt stage under an extension of the "*DeGarmo* doctrine."

## IV.

■ The Court of Appeals also held that, under the "*DeGarmo* doctrine," the appellant's point of error was waived by his testimony at the punishment stage of the trial in which he admitted his guilt.

### A.

The "*DeGarmo* doctrine" arose only after the enactment of Code of Criminal Procedure article 37.07, effective on January 1, 1966.[13] This article was the first authority for criminal trials to be held in two parts, the first concerned only with the guilt of the defendant, and the second only with the punishment. Of this "bifurcated" trial procedure, we said in *Brumfield v. State*, 445 S.W.2d 732, 738 (Tex.Cr.App.1969):

Such procedure was obviously designed to take the blindfolds off the judge or jury when it came to assessing punishment. It authorized the introduction of evidence on punishment not heretofore held to be generally admissible. It did, however, limit such introduction to the penalty stage to prevent the accused from being tried as a criminal generally prior to the determination of the issue of guilt. It thus allowed evidence critical to an enlightened determination of punishment but avoided the possibility of prejudice on the issue of guilt.

Further, it had long been recognized that jury verdicts of the unitary system were often the product of compromise, i.e., a finding of guilty in exchanging for moderate punishment, or a finding of not guilty because of the severity of the punishment. Some commentators also believed that a constitutional due process question was involved in the practice of reading the allegations of the indictments as to prior convictions and permitting proof of the same before the determination of guilt or innocence. [Footnote omitted.]

The *DeGarmo* doctrine applies to the defendant's testimony of guilt at the punishment phase of the trial. Such testimony is given after the jury has heard all the evidence relevant to the issue of guilt and has returned a verdict of guilt. Because the defendant's testimony comes after the verdict of guilt, the *DeGarmo* doctrine is conceptually different from the doctrine of harmless error (from 1973 until today mistakenly called "curative admissibility") or "waiver" which has been discussed above at III.

In all the "unitary" trials which were held before 1966, a defendant's testimony of guilt would have been received while the issue of guilt was before the jury. Under the traditional doctrine of harmless error (or "waiver"), such testimony might very well "cure" the harm of evidence erroneously received from other witnesses.

But testimony of guilt given at the punishment phase of the trial cannot be said to have rendered harmless the introduction of similar testimony at the guilt stage of trial— at least not in the sense we have thought of harmless error in the admission of similar evidence at the guilt phase. Any harmful effects of the introduction of inadmissible testimony were on the jury's decision of guilt. They cannot be ameliorated by the defendant's testimony which follows that decision.

Our statement in *McGlothlin v. State*, 896 S.W.2d 183, 186 (Tex.Cr.App.1995), that the *DeGarmo* doctrine is "a doctrine of waiver akin to the doctrine of curative admissibility" must not be misunderstood. The kinship between these doctrines is distant. As we have said (Part III, above) the doctrine that was misnamed "curative admissibility" is not a doctrine of true waiver. And the *DeGarmo* doctrine is more like estoppel than waiver, as shall appear below.

### B.

Appeals from bifurcated trials in which the appellant complained of the erroneous admission of evidence at the guilt stage, which was not cured by any similar evidence at the guilt stage, but which was followed by the defen-

13. Act of June 18, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws, vol. 2, p. 462–63.

dant's admission of guilt at the punishment stage, brought a new question to this Court. Our first consideration of the question was in *Richardson v. State,* 458 S.W.2d 665 (Tex.Cr. App.1970), an appeal from a conviction for rape. Richardson appealed a ruling that allowed the victim to identify him in court after an allegedly suggestive lineup. We noted that Richardson had not testified at the guilt stage, but had voluntarily testified on direct examination at the punishment phase that he was guilty. We said that, "by [his] employing such trial strategy, we can only logically say that on appeal such an appellant cannot question the sufficiency of the evidence or question the in-court identification of the prosecutrix." *Id.* at 666. We did allow Richardson to raise a complaint about the admission of hearsay evidence. *Ibid.*

In *Richardson* we did not explain why an appellant who admitted his guilt at the punishment phase could not question the sufficiency of the evidence. The explanation came in the next case to take up the question, *Boothe v. State,* 474 S.W.2d 219 (Tex.Cr. App.1971). Although we considered the merits of the appellant's contention that the evidence was insufficient, we also said:

> It would be an exercise in futility to reverse such a case for insufficient evidence where the testimony of the appellant could be used against him on a retrial.
>
> In *Richardson v. State,* Tex.Cr.App., 458 S.W.2d 665 we noted that where the appellant did not testify at the hearing on guilt but did so voluntarily at the hearing on punishment admitting his mistake he cannot on appeal question the sufficiency of the evidence.

*Id.* at 221. The *Boothe* Court also considered, and overruled, the appellant's complaints about the admission of evidence and the court's charge at the guilt stage.

These earliest cases held that an appellant who had admitted his guilt at the punishment stage could not appeal the sufficiency of evidence, but the Court allowed appeal of other errors that were committed at the guilt stage. *Accord, Dugger v. State,* 543 S.W.2d 374 (Tex.Cr.App.1976); *Garcia v. State,* 522 S.W.2d 203 (Tex.Cr.App.1975); *Jones v. State,* 518 S.W.2d 245 (Tex.Cr.App.1975).

The stated reason for refusing to reverse a conviction of such an appellant for insufficient evidence was that on the retrial the State would certainly obtain conviction by using the appellant's testimony from the first trial. If that reason ever had validity, it disappeared after the Supreme Court's holding that the Double Jeopardy Clause of the Fifth Amendment would be violated by a retrial after an appellate court held that the evidence of guilt was legally insufficient. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Insofar as these early precedents which underly our "*DeGarmo* doctrine" held that appellate complaints about insufficient evidence of guilt would be futile when the appellant admitted his guilt at the punishment phase, they cannot be relied on.

### C.

A second line of cases soon arose, which held that an appellant who admitted guilt at the punishment phase could not question the lawfulness of a search for, and seizure of, evidence. The first case in the line was *Palmer v. State,* 475 S.W.2d 797 (Tex.Cr. App.1972). After setting out the holdings of *Richardson, supra,* and *Boothe, supra,* the Court simply said, "The appellant having voluntarily taken the stand at the penalty stage and admitted having heroin in his possession cannot question the lawfulness of the search in which the heroin was seized." *Palmer v. State,* 475 S.W.2d at 798. The statement was only an alternative holding, for the Court went on to hold that the evidence was lawfully seized. *Id.* at 798–99. The Court also entertained other complaints about the admission of evidence at the guilt stage. *See id.* at 799–80. The Court did not explain how *Richardson* and *Boothe* supported its statement or why the appellant could not complain of the admission of the heroin but could complain of the admission of other evidence.

In *Sheridan v. State,* 485 S.W.2d 920, 921 (Tex.Cr.App.1972), the Court said:

> The appellant, having voluntarily taken the stand at the penalty stage and on direct examination admitted having marihuana in his possession, cannot question the lawful-

ness of the search wherein the marihuana was seized. *Palmer v. State*, Tex.Cr.App., 475 S.W.2d 797. *See also Boothe v. State*, Tex.Cr.App., 474 S.W.2d 219; *Richardson v. State*, Tex.Cr.App., 458 S.W.2d 665. In *Bradley v. State*, Tex.Cr.App., 478 S.W.2d 527, it was said, "This Court has held many times that the legality of the search need not be considered when the defendant testifies to or otherwise produces evidence of the same facts or if such facts are in the record without objection." *See Jones v. State*, Tex.Cr.App., 484 S.W.2d 745 (1972). Here the Court did three things, two of which were not new. It cited *Palmer*, which contained no reasoning, as we have seen. And, like the *Palmer* Court, it cited opinions (*Boothe, Richardson,* and *Jones*) which held that sufficiency of evidence could not be challenged, but other errors could. But it added a third leg of support: the citation to *Bradley*, which is an application of the ancient rule that error in admitting evidence at the guilt stage is cured by the defendant's introduction of the same evidence at the guilt stage. As we have seen, this ancient rule provides no logical support for the "*DeGarmo* doctrine."

Subsequent cases held that the appellant who confessed at the punishment stage could not complain of illegally seized evidence, but they gave no reasons. *See Hunnicutt v. State*, 531 S.W.2d 618, 622 (Tex.Cr.App.1976); *Downey v. State*, 505 S.W.2d 907, 909 (Tex.Cr.App.1974); *Sims v. State*, 502 S.W.2d 730, 731 (Tex.Cr.App.1973); *McKenzie v. State*, 487 S.W.2d 65, 66 (Tex.Cr.App.1972). Especially remarkable is *Downey v. State, supra,* in which the Court held that the appellant was foreclosed from questioning the legality of the search, but not from challenging the sufficiency of the evidence. The opinion was written by the same judge who had written in the leading case, *Richardson v. State*, 458 S.W.2d 665 (Tex.Cr.App.1970), a nearly opposite holding: that such an appellant could not challenge the sufficiency of the evidence, but could have his evidence point considered.

The holding that an admission of guilt at the punishment stage would prevent an appellant from questioning the legality of a seizure of evidence has been applied to prevent review of the admission of other kinds of evidence. *See, e.g., Gordon v. State*, 651 S.W.2d 793 (Tex.Cr.App.1983) (impeachment evidence); *Evans v. State*, 480 S.W.2d 387 (Tex.Cr.App.1972) (oral statement to bystander) (alternative holding). These expansions have not been explained in the opinions.

We have already pointed out in many of these cases, while the defendant's admission of guilt at the punishment stage was said to bar consideration of some complaints about errors at the guilt stage, other complaints about guilt-stage error were not barred from appellate review. Examples are plentiful. *See, e.g., Reeves v. State*, 566 S.W.2d 630 (Tex.Cr.App.1978) (Court considered points about charging instrument and discovery); *Dugger v. State*, 543 S.W.2d 374 (Tex.Cr.App. 1976) (Court considered evidence points and other, unspecified errors); *Garcia v. State*, 522 S.W.2d 203 (Tex.Cr.App.1975) (Court considered jury charge points, motion to exhume body, and charging instrument); *Jones v. State*, 518 S.W.2d 245 (Tex.Cr.App.1975) (Court considered jury charge points); *McKenzie v. State*, 487 S.W.2d 65, 66 (Tex. Cr.App.1972) (Court considered reading of testimony to jury); *Downey v. State*, 505 S.W.2d 907, 909 (Tex.Cr.App.1974) (Court considered evidence points and jury charge); *Evans v. State*, 480 S.W.2d 387 (Tex.Cr.App. 1972) (Court considered evidence points and alleged denial of cross-examination); *Boothe v. State*, 474 S.W.2d 219 (Tex.Cr.App.1971) (Court considered evidence and jury charge points).

It was, then, breathtaking to read in *DeGarmo v. State*, 691 S.W.2d 657, 660–61 (Tex. Cr.App.1985), that "appellant acknowledges that the present law in Texas is that if a defendant does not testify at the guilt stage of the trial, but does testify at the punishment stage of the trial, and admits his guilt to [*sic*] the crime for which [*sic*] he has been found guilty, he...not only waives a challenge to the sufficiency of the evidence, but he also waives *any error that might have occurred during the guilt stage of the trial.*" (Emphasis added.) Having made, without citation of authority, this sweeping state-

ment, *DeGarmo* has a justifiable claim to its eponymous status in this area of law.[14]

The *DeGarmo* opinion is also noteworthy for its attempt to supply a reason to support the doctrine. The *DeGarmo* Court said that when a defendant admits guilt at the punishment stage, "he has, for legal purposes, entered the equivalent of a plea of guilty." 691 S.W.2d at 661. The implication seems to be that the admission of guilt waives guilt-stage errors, just as a voluntary and knowing plea of guilty is said to waive all previous non-jurisdictional errors. *See Helms v. State,* 484 S.W.2d 925, 927 (Tex.Cr.App.1972). The analogy fails because a defendant's admission of guilt at the punishment stage is not a knowing and voluntary waiver like a plea of guilty.

To begin with, there is an statutory procedure to insure that a plea of guilty in a felony case involves a knowing waiver of appeal. A defendant who pleads guilty to a felony loses the right to appeal many points if the punishment does not exceed the recommended sentence to which the defendant has agreed. *See* Rule of Appellate Procedure 25.2(b)(3).[15] The court must advise a defendant that such a guilty plea will have that result.[16] There is no procedure to require a court to advise a defendant who takes the stand at the punishment phase that an admission of guilt will waive appellate consideration of errors at the guilt phase. Of course defense counsel may advise a defendant of this hazard, although it

is difficult to believe that the appellants in all these cases knew in advance that their testimony would result in waivers on appeal.

Even if this knowledge is imparted to the defendant, there is a more important reason why the analogy to the guilty plea fails: The decision whether to testify is not voluntary. It must be remembered that the *DeGarmo* doctrine has consequences only if the trial court committed reversible error at the guilt stage. (If there was no reversible error, the *DeGarmo* waiver is inconsequential.) Therefore every appellant who is subjected to a meaningful consequence of the *DeGarmo* doctrine is a defendant whose verdict of guilty was infected with reversible error. Without such a tainted verdict of guilt, there would be no punishment stage, and there would be no occasion for the defendant to face the decision whether to testify. This taint alone spoils the analogy to a voluntary guilty plea.

The decision whether to testify is made even less voluntary by the cruel trilemma in which the defendant is placed. If the defendant testifies truthfully and admits guilt, *DeGarmo* waiver results. If the defendant testifies untruthfully and denies guilt, the consequences are exposure to punishment for aggravated perjury and, of more immediate consequence, an increased punishment on account of the perjury. *Cf. United States v. Dunnigan,* 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (sentencing

14. We have pointed out elsewhere that the doctrine has become to be known as "the *DeGarmo* doctrine" "[b]ecause of the infamy of the case." *McGlothlin v. State,* 896 S.W.2d 183, 187 (Tex. Cr.App.1995). The reference is to its infamy in the popular press, not in legal literature. The defendant earned infamy by testifying at the punishment stage that he would kill the jury if they did not return a verdict for a death sentence.

It is ironic, though, that the *DeGarmo*-doctrine portion of the *DeGarmo* opinion is dictum, since the Court proceeded to consider and overrule the sufficiency of evidence point that *DeGarmo* raised. *See* 691 S.W.2d at 661.

15. "But if the appeal is from a judgment rendered on the defendant's plea of guilty or nolo contendere under Code of Criminal Procedure article 1.15, and the punishment assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant, the notice must:

"(A) specify that the appeal is for a jurisdictional defect;
"(B) specify that the substance of the appeal was raised by written motion and ruled on before trial; or
"(C) state that the trial court granted permission to appeal."
*Id.*

16. "(a) Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of: . . .

"(3) the fact that if the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, the trial court must give its permission to the defendant before he may prosecute an appeal on any matter in the case except for those matters raised by written motions filed prior to trial."
Tex.Code Crim. Proc. art. 26.13.

guideline which requires increased sentence for defendant's perjury in denying guilt at trial does not violate constitutional right to testify in own behalf). And if the defendant does not testify, the opportunity is lost for the defendant to give the sentencer information that only the defendant can provide. This would exclude in every case some information that is relevant to two important objectives of the system of criminal punishment: a penalty that will prevent this offender from committing other crimes, and a recognition of the possibility of rehabilitating the individual defendant.[17] And it will in many cases exclude information that is necessary for a defendant to carry burdens of proof. The defendant has the burden to prove eligibility for probation if the case is tried to a jury. *See Walker v. State,* 108 Tex.Crim. 190, 299 S.W. 417 (1927) (when defendant did not testify, evidence was insufficient to prove he had never been convicted of felony); Code of Criminal Procedure article 42.12, § 4(d)(3) & (e) (defendant must file sworn motion and jury must find that defendant has not been previously convicted of felony). The defendant also has the burden to prove certain mitigating issues.[18]

The analogy to the guilty plea does not justify the *DeGarmo* doctrine.

### D.

We made our most recent attempt to provide a reasoned justification for the *DeGarmo* doctrine in *McGlothlin v. State,* 896 S.W.2d 183, 187 (1995):

> The *DeGarmo* doctrine has been described as a "common-sense rule of procedure," *Bodde v. State,* 568 S.W.2d 344, 348 (Tex. Cr.App.1978), because "the function of trial is to sift out the truth from a mass of contradictory evidence...." *In re Mi-*

*chael,* 326 U.S. 224, 227, 66 S.Ct. 78, 80, 90 L.Ed. 30 (1945). Stated another way, "The basic purpose of a trial is the determination of truth." *Tehan v. United States,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). *See also, Duggan v. State,* 778 S.W.2d 465 (Tex.Cr.App.1989); *Lankford v. Idaho,* 500 U.S. 110, 127, 111 S.Ct. 1723, 1733, 114 L.Ed.2d 173 (1991); *Brown v. Wainwright,* 537 F.2d 154 (5th Cir.1976). When the defendant testifies and judicially confesses to the charged offense, the purpose of the trial process has been served—the truth has been determined and the purpose of the guilt/innocence phase of the trial has been satisfied. No reversible error should occur where the defendant has satisfied the necessity of the trial process. [Footnote 6:] Without explanation, the dissent contends the *DeGarmo* doctrine threatens the fairness and efficacy of our adversary process. *Post,* at 190. However, we fail to see how a conviction of an admittedly guilty person is an unfair result. Nor do understand how the efficacy of process is threatened when an individual is precluded from challenging a result that he admitted was correct.

This statement brings into view the other side of the *DeGarmo* coin. Just as the *DeGarmo* doctrine is consequential only when the guilty verdict is infected with reversible error, so too is it consequential only when an admittedly guilty person has been convicted. Recalling that a purpose of trial is to reach a true verdict is undoubtedly necessary to the resolution of the issue before us. But it can only begin our consideration. It cannot end it, because the ascertainment of truth is not the only objective of our law of criminal procedure. We as a people have deliberately chosen to adopt laws which interfere with the truth-seeking function of the criminal trial.

---

17. "[T]he provisions of this code are intended, and shall be construed, to achieve the following objectives:

    (1) to insure the public safety through:

    ...

    (B) the rehabilitation of those convicted of violations of this code; and

    (C) such punishment as may be necessary to prevent likely recurrence of criminal behavior; [and]

    ...

    (3) to prescribe penalties that are proportionate to the seriousness of offenses and that permit recognition of differences in rehabilitation possibilities among individual offenders."
TEX. PENAL CODE § 1.02.

18. *See* TEX. PENAL CODE §§ 8.04 (voluntary intoxication), 19.02(d) (murder in sudden passion), 20.04(d) (voluntary release of kidnap victim in safe place).

"Due process and those individual rights that are fundamental to our quality of life co-exist with, and at times override, the truth-finding function." *Morrison v. State,* 845 S.W.2d 882, 884 (Tex.Cr.App.1992).

- Through the Due Process Clauses of the Fifth and Fourteenth Amendments, Americans require that the judgment in a criminal trial be supported by proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). We do so knowing that some people who seem to be guilty will be acquitted.

- Through the Double Jeopardy Clause of the Fifth Amendment, Americans say that a person may not be subjected to a second trial after an acquittal even when there is clear evidence of guilt. *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

- Through the Self-incrimination Clause of the Fifth Amendment our people have required that a defendant may not be required to give incriminating testimony against himself, and that there be no comment on a defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

- Through the Due Process Clause of the Fourteenth Amendment, Americans have decided that truthful confessions obtained as a result of coercion or improper inducement may not be introduced in criminal trials. *See Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

- Through the Fourth Amendment our nation has forbidden the government to acquire evidence through unreasonable search or seizure, or by general warrants, and it has decided that evidence so obtained be excluded from criminal trials. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The people of Texas have repeatedly decided that illegally obtained evidence be excluded from criminal trials.[19]

- Through a delegation of legislative authority to this Court, the people of our state have decided that privileged evidence should be excluded from criminal trials. *See* Rules of Evidence, article V.

- Texans also have decided through their legislatures that statements made as a result of custodial interrogation not be admitted in criminal trials if they do not meet certain formal requirements. *See* Code of Criminal Procedure article 38.22. They have decided that criminal defendants may not be convicted on the uncorroborated testimony of an adult victim of a sexual offense who did not make outcry within a year, or the uncorroborated testimony of an accomplice. *See id.,* articles 38.07, 38.14.

- By exercising the judicial authority given this Court in the Texas Constitution, we have held that jurors should not be allowed to propound questions to witnesses because such a procedure would endanger the adversary system. *Morrison v. State,* 845 S.W.2d 882 (Tex.Cr.App.1992).

Each of these decisions was made to preserve a value that was seen to be more important than the discovery of the truth in a trial. This list of examples may not be complete, and it cannot be final. The *agonia,* the constant struggle in American criminal procedure, is between truth-finding and other values.

Insofar as the *DeGarmo* doctrine estops a defendant from raising on appeal a violation of any of these guaranties, it cannot be justified on the ground that the verdict of guilt was correct.

E.

The appellant in this case seeks appellate review of the trial court's decision to admit evidence that he says was illegally seized. None of the reasons for the *DeGarmo* doctrine that we have examined can justify an appellate court's estopping him or holding that he has waived review or that such an error at the guilt stage would always be harmless. We hold that the *DeGarmo* doc-

---

19. *See* nn. 11–12 and accompanying text, *supra.*

trine cannot be invoked to prevent such appellate review.

## V.

The judgment of the Court of Appeals is reversed and the case is remanded for consideration of the appellant's points of error.

BAIRD, J., filed a concurring opinion.

McCORMICK, P.J., filed a dissenting opinion, in which KELLER, J., joined.

BAIRD, J., concurring opinion on appellant's petition for discretionary review.

Believing the majority goes too far in its treatment of *DeGarmo* and *McGlothlin,* I join the judgment of the Court but not its opinion.

## I.

Prior to trial, appellant moved to suppress evidence obtained during a traffic stop, contending the search violated the Fourth and Fourteenth Amendments to the United States Constitution, Article I, § 9 of the Texas Constitution, and/or Article 38.23 of the Texas Code of Criminal Procedure. The trial judge overruled the motion. At trial, appellant testified and admitted possessing the cocaine but argued the search violated his aforementioned constitutional and statutory rights. Appellant requested and received a jury instruction based upon Tex.Code Crim. Proc. Ann. art. 38.23(a). The jury rejected that argument and appellant was convicted of aggravated possession of a controlled substance.

On direct appeal, appellant contended the search was unlawful. However, the Court of Appeals refused to reach the merits of that contention. Instead, the Court summarily dismissed appellant's claims, finding appellant had waived appellate review of the search issue by testifying at the guilt phase

of trial. *Leday v. State,* No. 09–95–361–CR, 1997 WL 354770 (Tex.App.—Beaumont June 25, 1997)(not designated for publication).

We granted review to decide the following issue:

Whether because of conflicting cases on the subject the *DeGarmo* Doctrine authorizes an appellate court to find waiver of claims of illegal arrest, search, and seizure asserted under the Fourth and Fourteenth Amendments to the United States Constitution, Article I, § 9 of the Texas Constitution, and/or Article 38.23 of the Texas Code of Criminal Procedure where a defendant testifies at the guilt and/or punishment phase of the trial and admits possession of the illegally obtained evidence, here a controlled substance, where his testimony is impelled or necessary to meet, destroy, explain, or attempt to overcome the State's use of the illegally obtained evidence at trial?

For the reasons stated below, I believe the Court of Appeals erred in extending the *DeGarmo* Doctrine to conflict with established precedent.

## II.

### A.

I begin with a discussion of a doctrine of waiver commonly referred to as the *DeGarmo* Doctrine. The *DeGarmo* Doctrine is derived from the doctrine of curative admissibility which stands for the proposition that if an appellate court finds a trial court improperly admitted evidence, the error is "cured" if the defendant presented the same evidence or testimony to which he had previously objected. In *DeGarmo v. State,* we held when a defendant testifies at the punishment phase and unequivocally admits his guilt, he waives any error that might have occurred during the guilt stage of the trial. 691 S.W.2d 657, 661 (Tex.Cr.App.1985).[1]

---

1. *DeGarmo* did not announce a new rule of law. Indeed, in challenging the sufficiency of the evidence, *DeGarmo* "acknowledge[d] that the present law in Texas is that if a defendant does not testify at the guilt stage of the trial, but does testify at the punishment stage of the trial, and admits his guilt to the crime for which he has been found guilty, he has, for legal purposes,

entered the equivalent of a plea of guilty." *Id.,* 691 S.W.2d at 660–61. *See, Gordon v. State,* 651 S.W.2d 793, 793 (Tex.Cr.App.1983); *Brown v. State,* 617 S.W.2d 234 (Tex.Cr.App.1981); *Reeves v. State,* 566 S.W.2d 630, 633 (Tex.Cr.App.1978); *Dugger v. State,* 543 S.W.2d 374, 377 (Tex.Cr. App.1976); *Hunnicutt v. State,* 531 S.W.2d 618, 622 (Tex.Cr.App.1976); *Garcia v. State,* 522

The *DeGarmo* Doctrine has been described as a "common-sense rule of procedure." *Bodde v. State,* 568 S.W.2d 344, 348 (Tex.Cr.App.1978). The rationale for this doctrine is based upon the premise that the basic purpose of a trial is the determination of truth. When the defendant testifies and judicially confesses to the charged offense, the purpose of the trial process has been served—the truth has been determined and the purpose of the guilt/innocence phase of the trial has been satisfied. No reversible error should occur where the defendant has satisfied the necessity of the trial process. *McGlothlin v. State,* 896 S.W.2d 183, 187 (Tex.Cr.App.1993).

### B.

In *McWhorter v. State,* 911 S.W.2d 538 (Tex.App.—Beaumont 1995, no pet.), the defendant was charged with possession of cocaine. At trial, the defendant testified regarding the events surrounding his traffic stop and on cross examination, admitted possession of the alleged cocaine. The sole issue on direct appeal was "the legality of the search and subsequent seizure of the contraband in question." *Id.,* 911 S.W.2d at 539.

While recognizing the cases giving rise to the *DeGarmo* Doctrine "involved a judicial admission by a defendant during the *punishment* phase of the trial" *ibid* (emphasis in the original), the Court of Appeals held the *De-Garmo* doctrine was not limited to punishment testimony. In reaching this conclusion, the Court reasoned:

> We are unaware of any reason why the *DeGarmo* doctrine, as affirmed by the *McGlothlin* Court, should not be applied to instances where a defendant, for whatever trial strategy purposes, takes the witness stand in the *guilt/innocence* phase of a trial and judicially admits to having committed the offense for which he is on trial.

*Id.,* 911 S.W.2d at 540 (emphasis in the original).

### III.

The question presented in the instant case may be stated as follows: Did the *McWhorter* Court correctly expand the *DeGarmo* Doctrine to include testimony at the guilt phase of trial? Because such an extension of the *DeGarmo* Doctrine would conflict with prevailing authority from this Court and the United States Supreme Court, I believe this Court can answer that question in the negative, disavow the holding in *McWhorter,* and still find *DeGarmo* and *McGlothlin* workable precedent.

In *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), the Supreme Court considered the case of a defendant who testified at trial alleging his confessions were coerced and offered his own version of the facts at trial. The conviction was reversed, with the Court of Appeals determining the confessions were illegally obtained and inadmissible. *Harrison v. United States,* 359 F.2d 214, 222, on rehearing en banc, 359 F.2d at 223 (D.C.Cir.1965). At retrial, the confessions were not used, but Harrison's previous testimony to rebut the confessions was read to the jury, over objection by the defense. Harrison was again convicted and the Court of Appeals affirmed, holding Harrison had waived his Fifth Amendment right not to testify by taking the stand.

The Supreme Court granted *certiorari* to determine "whether the petitioner's trial testimony was the inadmissible fruit of the illegally procured confessions." *Id.,* 392 U.S. at 221, 88 S.Ct. at 2009. The Court determined the crux of the inquiry was based upon not *whether* Harrison testified but *why.* "If he did so in order to overcome the impact of the confessions illegally obtained and hence, improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." *Id.,* 392 U.S. at 223, 88 S.Ct. at 2010. The Court held the resulting inquiry was whether petitioner's trial testimony was impelled by

S.W.2d 203, 205 (Tex.Cr.App.1975); *McKenzie v. State,* 487 S.W.2d 65, 66 (Tex.Cr.App.1972); *Sheridan v. State,* 485 S.W.2d 920, 921 (Tex.Cr. App.1972); *Palmer v. State,* 475 S.W.2d 797, 798 (Tex.Cr.App.1972); *Mullane v. State,* 475 S.W.2d

924, 926 (Tex.Cr.App.1972); *Boothe v. State,* 474 S.W.2d 219, 221 (Tex.Cr.App.1972); and, *Richardson v. State,* 458 S.W.2d 665, 666 (Tex.Cr. App.1970).

the use of the contested confessions. As the Court stated:

> ... It is, of course, difficult to unravel the many considerations that might have led the petitioner to take the witness stand at his former trial. But, having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would not have testified as he did if his inadmissible confessions had not been used. 'The springs of conduct are subtle and varied,' Mr. Justice Cardozo once observed. 'One who meddles with them must not insist upon too nice a measure of proof that the spring which he released was effective to the exclusion of all others.' Having 'released the spring' by using the petitioner's unlawfully obtained confessions against him, the Government must show that its illegal action did not induce his testimony.

*Id.,* 392 U.S. at 224–25, 88 S.Ct. at 2011, (citing *DeCicco v. Schweizer,* 221 N.Y. 431, 438, 117 N.E. 807, 810, L.R.A.1918E 1004).

In *Thomas v. State,* 572 S.W.2d 507 (Tex. Cr.App.1976), the issue was not an illegally obtained confession, but evidence from an illegal search and seizure. The issue was whether Thomas, by testifying, had waived the error of the illegal search. In applying the holding of *Harrison,* Presiding Judge Onion explained:

> ... The [Supreme] Court ... found that the burden was on the government to show that its illegal action in obtaining and introducing the confessions had not impelled the petitioner's testimony ...

> \* \* \* \*

> Under *Harrison,* the "question is not Whether the petitioner made a knowing decision to testify, but Why. If he did so in order to overcome the impact of the confessions illegally obtained and hence improperly introduced," the testimony is

tainted by the same illegality that rendered the confessions themselves inadmissible.

> We find that *Harrison* does in fact add a corollary to the doctrine of curative admissibility, i.e., the harmful effect of improperly admitted evidence which is obtained by illegal police practices is not cured when a defendant gives testimony on direct examination which establishes the same or similar facts unless the State can show its illegal action in obtaining and introducing the evidence did not impel the defendant's testimony.

*Id,* 572 S.W.2d at 516 (Tex.Cr.App.1976) (Opinion on State's Motion for Rehearing). The holding in *Thomas* has been reaffirmed many times by this Court.

In *Sherlock v. State,* 632 S.W.2d 604 (Tex. Cr.App.1982), the State contended the defendant had waived any objection to the search and seizure of the guns in his home by testifying "to the same or similar facts as those objected to by the motion to suppress." *Id.,* 632 S.W.2d at 606. This Court held:

> The rule relied on by the State is the doctrine of curative admissibility, which provides that "the admission of improper evidence cannot be urged as grounds for reversal where the defendant gives testimony on direct examination which establishes the same facts as those objected to." *Thomas v. State,* 572 S.W.2d 507. However, where a defendant testifies in order to overcome the impact of illegally obtained and improperly admitted evidence, that testimony is tainted by the same illegality that renders the evidence inadmissible. *Thomas v. State, supra.* See *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047.

*Id.,* 632 S.W.2d at 606.[2]

In *Sweeten v. State,* 693 S.W.2d 454 (Tex. Cr.App.1985), Judge Teague explained:

> the overruling of his objection to illegally obtained evidence;
> (2) even if he would have called the defendant to the stand, evidence that his client would have testified in the same manner but for the introduction of that evidence;

---

**2.** Additionally, the *Sherlock* Court enunciated the following factors as relevant criteria in determining whether the State had met its burden to show the defendant's testimony was not impelled by the introduction of illegally obtained evidence. The Court

(1) evidence that defendant's counsel would not have called his client to the stand but for

Notwithstanding that we agree with the district attorney that the facts of *Harrison v. United States, supra,* are obviously distinguishable from either *Thomas v. State, supra,* or this cause, we find that the principles of law stated in *Harrison,* which we find fall under the rationale of the "fruit of the poisonous tree" doctrine, see *Wong Sun v. United States, supra,* which principles this Court held in *Thomas v. State, supra,* were but a corollary to the doctrine of curative admissibility, are more than applicable to the situation where a defendant is impelled to testify because of the admission into evidence over objection of illegally seized or obtained evidence.

*Sweeten,* 693 S.W.2d at 458.

In applying and explaining this doctrine, Judge McCormick wrote in *Bush v. State,* 697 S.W.2d 397, 404 (Tex.Cr.App.1985):

The doctrine of curative admissibility provides that the improper admission of evidence over objection is rendered harmless by the admission into evidence of the same facts without objection at another point during the course of the trial. *Thomas v. State,* 572 S.W.2d 507 (Tex.Cr. App.1978) (Opinion on State's Motion for Rehearing); *Nicholas v. State,* 502 S.W.2d 169 (Tex.Cr.App.1973) (Opinion on State's Motion for Rehearing). A corollary to this rule, however, is that the harmful effect of improperly admitted evidence is not cured by the introduction of rebuttal evidence designed to meet, destroy, or explain the improper evidence. *Howard v. State,* 599 S.W.2d 597, 605 (Tex.Cr.App.1979) (Opinion on State's Motion for Rehearing); *Thomas v. State, supra; Nicholas v. State, supra.* In *Thomas v. State, supra,* this Court altered the Texas rule on curative admissibility in light of *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

(3) whether the State introduced other evidence of guilt, and the strength of that evidence; and,
(4) whether there is other evidence, aside from the evidence objected to, that would have induced the defendant to testify in the same manner.
*Id.,* 632 S.W.2d at 607.

\* \* \* \*

"We find that *Harrison* does in fact add a corollary to the doctrine of curative admissibility, i.e., the harmful effect of improperly admitted evidence which is obtained by illegal police practices is not cured when a defendant gives testimony on direct examination which establishes the same or similar facts unless the State can show that its illegal action in obtaining and introducing the evidence did not impel the defendant's testimony...." *Thomas v. State,* supra at p. 516.

In light of this overwhelming precedent, the law is clear: when a defendant testifies to meet, rebut, explain, or in an attempt to overcome the State's use of illegally obtained evidence, that testimony is not a waiver of error for appellate review purposes. The Court of Appeals failed to acknowledge this line of cases.

## IV.

As noted in part II of this opinion, neither *DeGarmo,* nor *McGlothlin,* hold that a defendant who testifies at the guilt phase of the trial waives appellate review. To so hold would conflict with the prevailing cases discussed in part III of this opinion. I believe *DeGarmo* and *McGlothlin* should be applied as written; only when a defendant testifies at the *punishment* phase, and unequivocally confesses, does he waive any error that might have occurred during the guilt stage of the trial.[3] The corollary to this holding should be that the *DeGarmo* Doctrine has no application where the defendant testifies at the guilt phase of trial to meet, rebut, explain, or attempt to overcome the State's use of illegally obtained evidence. This rule should also apply when a defendant testifies at *both* phases of the trial. If the guilt phase testimony was necessary to meet, rebut, explain, or attempt to overcome the State's use

3. It is well settled that decisions of a court of last resort must be regarded as law and should be followed by intermediate courts, regardless of their views as to the correctness thereof, until reversed or overruled by the court rendering them. *Abdnor v. Ovard,* 653 S.W.2d 793 (Tex.Cr. App.1983).

of illegally obtained evidence, then the defendant's testimony at the punishment phase does not waive appellate review.

For these reasons, I join only the judgment of the Court.

McCORMICK, Presiding Judge, dissenting.

I respectfully dissent. It is noteworthy the Court did not grant discretionary review in this case specifically for the purpose of reexamining the *DeGarmo* doctrine.[1] The Court granted discretionary review to decide whether this doctrine also applies when a defendant admits his guilt at guilt/innocence and later complains on appeal about errors occurring at guilt/innocence.[2]

Although in other recent cases several members of the Court have taken the position that the Court should exercise restraint

and not decide claims not presented in a party's discretionary review petition and that the Court should adhere to principles of *stare decisis* in cases like this—a position not taken by any members of the Court here, I nevertheless believe the Court does not abuse its discretionary authority to reexamine the *DeGarmo* doctrine. So this dissenting opinion also addresses the merits of the issue.

The Court's thoughtful opinion, echoing some but not all of Judge Meyers' dissenting opinion in *McGlothlin v. State*, apparently decides to abandon entirely the *DeGarmo* doctrine which means this guilty-admitting appellant may complain on appeal about the admission at guilt/innocence of evidence which he claims was seized in violation of the Fourth Amendment.[3] Much of the Court's opinion is based on federal constitutional law.[4] I would retain the *DeGarmo* doctrine

---

1. This doctrine states that a defendant who admits his guilt at punishment "waives" any "error that might have occurred during the guilt stage of the trial." *DeGarmo v. State*, 691 S.W.2d 657, 661 (Tex.Cr.App.), cert. denied, 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985).

2. In this case, appellant also admitted his guilt at punishment so it is not even really necessary to decide the question upon which the Court granted discretionary review.

3. In *McGlothlin*, this Court granted discretionary review for the specific purpose of reexamining *DeGarmo*. See *McGlothlin v. State*, 896 S.W.2d 183, 190 (Tex.Cr.App.) (Meyers, J., dissenting), cert. denied, 516 U.S. 882, 116 S.Ct. 219, 133 L.Ed.2d 150 (1995). Judge Meyers' dissenting opinion in *McGlothlin* would have decided a defendant's admission of guilt at guilt/innocence waives any appellate claim about the sufficiency of the evidence to support his conviction. See *McGlothlin*, 896 S.W.2d at 191 (Meyers, J., dissenting) (declining to hold evidence is insufficient to support conviction where defendant admits guilt before the factfinder before its verdict at guilt/innocence). The Court's opinion in this case apparently would allow Judge Meyers' hypothetical guilty-admitting defendant in *McGlothlin* to complain on appeal about the sufficiency of the evidence to support his conviction. See *Leday v. State*, 983 S.W.2d at 725, 726, (Tex.Cr.App.1998) (due process guarantees guilt must be proved beyond a reasonable doubt and "[i]sofar as the *DeGarmo* doctrine estops a defendant from raising on appeal a violation of [this guarantee], it cannot be justified on the ground that the verdict of guilt was correct"). So there appears to be some conflict between the Court's

opinion in this case and Judge Meyers' dissenting opinion in *McGlothlin*.

4. This is not very clear from the Court's opinion. However, I have concluded the Court's decision rests mostly on federal constitutional law since it relies on various federal constitutional truth-subverting values identified on pages 26 to 27 of its opinion and on its determination that for *DeGarmo* purposes a defendant's decision to testify and admit his guilt in open court is not a "voluntary" decision. The Court's opinion effectively decides *DeGarmo* violates the United States Constitution.

The Court's opinion does claim *DeGarmo* negates the public policy expressed in Article 38.23(a), V.A.C.C.P. See *Leday*, 983 S.W.2d at 719. However, the public policy expressed in Article 38.23(a) is that a jury may decide fact issues on whether evidence has been "obtained in violation of the law." *DeGarmo* does not prevent a jury from deciding these issues. A defendant can take the stand at guilt/innocence, admit his guilt in open court and still receive his Article 38.23(a) instruction when the evidence warrants it as appellant did in this case. So *DeGarmo* does not violate the public policy expressed in the "plain" language of Article 38.23(a).

The Court's opinion also claims Article 38.23(a) incorporates the federal equivalent of the "impelled testimony" rule which is part of the "fruit of the poisonous tree doctrine." However, Article 38.23(a) by its very terms does not incorporate this "impelled testimony" rule. But see *Leday*, 983 S.W.2d at 718–719 (one exception to rule that erroneous admission of evidence is rendered harmless when defendant testifies to same facts is when a defendant's testimony was "impelled by the State's introduction of evidence

and also extend it to when a defendant makes a "solemn admission of guilt" in open court at guilt/innocence which means appellant may not complain on appeal about the admission of the evidence which he claims was seized in violation of the Fourth Amendment. I would do this under an alternative rationale than that relied upon in *DeGarmo* since the Court's opinion amply demonstrates *DeGarmo's* shaky decisional foundation even though its basic rule is sound.

The decision in this case requires delicately balancing the criminal justice system's basic purpose of ascertaining the truth and the overriding truth-subverting values identified on pages 26 to 27 of the Court's opinion.[5] See *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984) (basic purpose of criminal justice system is truth-finding function). When a defendant admits his guilt in open court during trial, this Court should advance some very good reasons why this guilty-admitting defendant's conviction should be reversed on appeal and why his admission of guilt arguably cannot later be used against him in the event of a retrial. See *McGlothlin,* 896 S.W.2d at 191 (Meyers, J., dissenting) (judicial confession is "significant event" in the criminal process because it amounts to an admission of guilt made before a neutral tribunal under circumstances where the defendant's right to remain silent is scrupulously honored).

The truth-subverting values identified on pages 26 to 27 of the Court's opinion are not ends in and of themselves. They do not exist for the sole purpose of subverting the search for the truth. They are means to the end of making a reliable and fair determination[6] of the truth on the issue of a defendant's guilt/innocence. See *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 859–60, 122 L.Ed.2d 203 (1993) and at 870 (O'Connor, J., concur-

ring). Once the end of ascertaining the truth has been achieved by the significant event of a defendant's voluntary admission of guilt in open court, the value of assuring this defendant a "fair trial" becomes less important. When a defendant has voluntarily admitted his guilt in open court, the criminal justice system's basic purpose of ascertaining the truth outweighs or "renders irrelevant" the defendant's interest in a "fair trial." *DeGarmo* does not subvert the value of insuring a defendant a "fair trial" because under *DeGarmo* a defendant still retains the option of choosing not to testify and insisting on his right to a "fair trial."

However, the Court's opinion says the truth-subverting values identified on pages 26 to 27 of its opinion override this search for the truth even when the defendant admits his guilt in open court because the defendant's "decision to testify is not voluntary" making the jury's guilty verdict still infected or tainted with reversible error as if the defendant had not testified at all. See *Leday,* 983 S.W.2d at 723 (defendant's decision to testify is not "voluntary"). The Court's opinion identifies the "cruel trilemma" in which the *DeGarmo* doctrine places a defendant and which the Court's opinion says makes the defendant's decision to testify involuntary. See *id.* (defendant can either testify truthfully and admit guilt or testify untruthfully and deny guilt or exercise right to remain silent); see also *McGlothlin,* 896 S.W.2d at 191 (Meyers, J., dissenting) (identifying difficult decisions a defendant must make).

That this "trilemma" may "tug at the heartstrings" does not make it "cruel." Compare *Brogan v. U.S.,* 522 U.S. 398, 118 S.Ct. 805, 809–10, 139 L.Ed.2d 830 (1998) (rejecting defendant's "cruel trilemma" argument in another context and declining to

that was obtained in violation of the law"). Under the "plain" language of Article 38.23(a) this defendant's testimony is not "obtained in violation of the law."

5. A clear example of an overriding truth-subverting value is the exclusion from evidence of a confession extracted from a defendant by torture. If this is all the evidence the prosecution has, the defendant walks free no matter how guilty he is or how truthful his confession is. The overriding

truth-subverting value or policy advanced here is that our society does not tolerate the extraction of confessions by torture even to the point of allowing a clearly guilty defendant to walk free. An exception to this before the Court's decision today was when the defendant admits his guilt in open court during trial.

6. This usually is referred to as a "fair trial." See *McGlothlin,* 896 S.W.2d at 191 (Meyers, J., dissenting).

write into the law a "species of compassion inflation"). Despite having had the opportunity to do so for almost fifteen years, the Supreme Court has never decided Texas' *DeGarmo* doctrine violates the Constitution.

That *DeGarmo* might require a defendant to make some difficult choices does not render involuntary his decision to admit his guilt in open court. The Constitution does not always guarantee us freedom from making difficult choices. Compare *Brogan*, 118 S.Ct. at 810. And, as in *Brogan*, one of the lemmas the Court's opinion identifies as "cruel" is actually our Fifth Amendment right against compelled self-incrimination. See *id.* (defendant's claim altered elements of "cruel trilemma" so that "right to remain silent, which was the *liberation* from the original trilemma, is now *itself* a cruelty") (emphasis in original). This Fifth Amendment right cannot be considered cruel. See *id.*

*DeGarmo's* essential observation that a defendant's admission of guilt in open court is analogous to a voluntary guilty plea is correct and does not fail. See *DeGarmo*, 691 S.W.2d at 661 (defendant's admission of guilt at trial is "equivalent of a plea of guilty"); but see *Leday*, 983 S.W.2d at 723 (*DeGarmo's* analogy to "voluntary guilty plea" fails).[7] United States Supreme Court precedents are instructive on the legal effect of a defendant's admission of guilt in open court and also are instructive on the "voluntary" nature of such an admission of guilt as well as to the Court's "cruel trilemma" rationale. These precedents recognize that difficult choices or "cruel trilemmas" do not necessarily render admissions of guilt in open court involuntary, that defendants still have various options available to them to preserve their right to a "fair trial," and that defendants cannot simultaneously admit their guilt and insist upon their right to a "fair trial."

Federal constitutional law is consistent with *DeGarmo*. Federal constitutional law is a guilty plea—that is, an admission of guilt in open court—waives or "renders irrelevant" most complaints "relating to deprivation of constitutional rights" occurring before the plea or admission of guilt. See *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) (guilty plea represents break in the chain of events which has preceded it in the criminal process, and, when a defendant solemnly admits in open court that he is in fact guilty of the offense with which he is charged, he may not later raise independent claims relating to deprivation of constitutional rights that occurred prior to entry of plea; he may only attack the voluntary and intelligent character of the guilty plea by showing that advice he received from counsel was not within the standards set forth in [citation omitted]).

This holding in *Tollett* is based on the "principle recognized in the *Brady* trilogy" of cases decided in 1970. *Tollett*, 93 S.Ct. at 1608; see *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).[8] Contrary to the position taken in Judge Meyers' concurring opinion in this case and in his dissenting opinion in *McGlothlin*, the overriding principle expressed in *Tollett* and in the "*Brady* trilogy" is that a defendant's voluntary admission of guilt in open court "renders irrelevant" most constitutional deprivations occurring before this admission of guilt including whether the defendant has received a "fair trial." See *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 242 fn. 2, 46 L.Ed.2d 195 (1975) (*Tollett's* rule not so much based on "waiver" as it is on idea that voluntary admission of guilt "renders irrelevant" most constitutional deprivations occurring before the admission of guilt).[9]

---

7. This is perhaps one reason why the United States Supreme Court has never decided Texas' *DeGarmo* doctrine violates the federal constitution. Consistent with principles of federalism, Texas can decide as a matter of state law that a defendant's admission of guilt in open court is the "equivalent of a plea of guilty." *DeGarmo*, 691 S.W.2d at 661.

8. These latter three cases comprise the "*Brady* trilogy."

9. After consulting Shepherd's citations to *Tollett* and the "*Brady* trilogy," *Tollett's* general rule has some exceptions not applicable here. See, e.g., *Menna*, 96 S.Ct. at 242 fn. 2 (guilty plea might not "waive" double jeopardy claims; guilty plea "renders irrelevant" constitutional violations

And, in *McMann* the Court also held an admission of guilt in open court is not rendered involuntary on the ground that it was motivated by a coerced confession. See *McMann*, 90 S.Ct. at 1449.[10] The Court in *McMann* rejected the rationale advanced by the Court today—the "trilemma" and the difficult choices in which *DeGarmo's* rule places a defendant are "cruel" and render involuntary a defendant's admission of guilt in open court.

"Since we are dealing with a defendant who deems his confession crucial to the State's case against him and who would go to trial if he thought his chances of acquittal were good, his decision to plead guilty or not turns on whether he thinks the law will allow his confession to be used against him. *For the defendant who considers his confession involuntary and hence unusable against him at trial, tendering a plea of guilty would seem a most improbable alternative. The sensible course would be to contest his guilt, prevail on his confession claim at trial, on appeal, or, if necessary, in a collateral proceeding, and win acquittal, however guilty he might be. The books are full of cases in New York and elsewhere, where the defendant has made this choice and has prevailed. If he nevertheless pleads guilty the plea can hardly be blamed on the confession which in his view was inadmissible evidence and no proper part of the State's case.* Since by hypothesis the evidence aside from the confession is weak and the defendant has no reasons of his own to plead, a guilty plea in such circumstances is nothing less than a refusal to present his federal claims to the state court in the first instance—a *choice* by the defendant to take the benefits, if any, of a plea of guilty and then to pursue his coerced-confession claim in collateral proceedings. *Surely later allegations that the confession rendered his plea involuntary would appear incredible,* and

"not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established").

**10.** In *McMann,* the court held a guilty plea is not subject to attack "on the ground that it was motivated by a coerced confession unless the

whether his plain bypass of state remedies was an intelligent act depends on whether he was so incompetently advised by counsel concerning the forum in which he should first present his federal claim that the Constitution will afford him another chance to plead.

A more credible explanation for a plea of guilty by a defendant who would go to trial except for his prior confession is his prediction that the law will permit his admissions to be used against him by the trier of fact. At least the probability of the State's being permitted to use the confession as evidence is sufficient to convince him that the State's case is too strong to contest and that a plea of guilty is the most advantageous course. *Nothing in this train of events suggests that the defendant's plea, as distinguished from his confession, is an involuntary act.* His later petition for collateral relief asserting that a *coerced* [11] confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. *The Constitution, however, does not render pleas of guilty so vulnerable.*

*As we said in [Brady], the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.* All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel *must make their best judgment* as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury

defendant was incompetently advised by his attorney." See *McMann,* 90 S.Ct. at 1449. That counsel's advice was "wrong" does not necessarily render the plea involuntary. See *McMann,* 90 S.Ct. at 1448; *Parker,* 90 S.Ct. at 1462.

**11.** Emphasis in Original.

of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." *McMann*, 90 S.Ct. at 1447–48. (Emphasis Supplied).

*McMann* and the other "*Brady* trilogy" support holding that a defendant's decision to admit his guilt in open court is not tainted or rendered involuntary by some constitutional deprivation that may have occurred prior to or even motivated this decision. See *McMann*, 90 S.Ct. at 1448 (defendant's guilty plea motivated by a coerced confession is not an involuntary act). It is not much of a stretch to say *Tollett* and *McMann* would have been decided the same way even had the defendants in those cases waited until trial to take the stand and admit their guilt in open court without the benefit of the admonishments associated with a pretrial formal plea of guilty. With respect to a defendant's decision to admit his guilt in open court, the dynamics at work in both the *Tollett* and the *DeGarmo* situations are essentially the same. See *McMann*, 90 S.Ct. at 1447–48, and at 1453–54 fn. 4 (Brennan, J., dissenting).

*McMann* also suggests a way out of *DeGarmo's* "cruel trilemma" which is a defendant can preserve his right to a "fair trial" by deciding not to testify *and* pursue on

appeal any claims alleging deprivations of constitutional rights. See *McMann*, 90 S.Ct. at 1447. The "books are full of cases" where a "defendant has made this choice and has prevailed." See *id.*[12]

*McMann* and the other "*Brady* trilogy" do not permit a defendant both options of simultaneously admitting his guilt in open court and also insisting on a "fair trial." The balance between the competing interests is properly and delicately struck by permitting the defendant one *or* the other of these options. However, the Court's opinion improperly shifts this delicate balance decidedly in favor of criminal defendants and against the legitimate interests of law-abiding citizens by permitting a defendant to have his cake and eat it to, as it were.

The Court's opinion allows a defendant to retain the benefits "if any" of his decision to take the stand and admit his guilt in open court. But see *McMann*, 90 S.Ct. at 1447. If the defendant does not obtain any benefits from this decision, the Court's opinion then permits him to pursue his claims alleging deprivations of constitutional rights. But see *id.* (defendant not permitted to take benefits "if any" of pleading guilty and then "pursue his coerced-confession claim"). And, under the Court's opinion this defendant's admission of guilt in open court arguably cannot later be used against him in the event of a retrial.[13]

The Court's opinion also claims a defendant's decision to testify and admit his guilt in open court is not voluntary because there is no procedure, such as when a defendant formally pleads guilty to avoid a trial, "to require a court to advise a defendant who takes the stand at the punishment phase that

---

12. A defendant can also plead guilty pretrial without an agreement on punishment and preserve his opportunity "to give the sentence information that only the defendant can provide." See *Leday*, 734 S.W.2d at 723.

13. The Court's opinion seems to create almost a *per se* rule that a defendant's decision to admit his guilt in open court is rendered involuntary by *claimed* constitutional deprivations occurring before this admission of guilt. This raises the question of the effect of an appellate court later deciding these claimed constitutional violations

are without merit. In these circumstances and under the Court's decision, is not the defendant's decision to admit his guilt in open court still "involuntary" possibly requiring a reversal of his conviction? Or, will this appellate decision somehow render "voluntary" the defendant's decision to admit his guilt in open court? Will the "voluntariness" determination turn on the merits of the defendant's claims alleging constitutional deprivations? And, what difference should the merits of these claims make to the "voluntariness" of the defendant's decision to admit his guilt in open court?

an admission of guilt will waive appellate consideration of errors at the guilt phase." See *Leday*, 983 S.W.2d at 723. There is no legal rule and the Court's opinion cites none that the absence of such an admonishment renders involuntary a defendant's decision to testify and admit his guilt in open court. And contrary to what the Court's opinion claims, I do not find it difficult to believe that defense counsel routinely advises a defendant of this hazard and that "the appellants in all [the *DeGarmo* cases cited in the Court's opinion] knew in advance that their testimony would result in waivers on appeal." But see *Leday*, 983 S.W.2d at 723.

In any event this rationale sweeps too broadly and is not a sufficient justification for overruling *DeGarmo* because it gives the benefit of the Court's decision to defendants who actually "knew in advance that their testimony would result in waivers on appeal." Moreover, the "*Brady* trilogy" suggests the proper remedy in this situation would be for a defendant to claim he was "incompetently advised by counsel."

Another important and significant consideration to the decision in this case is that in *Helms v. State* this Court adopted what amounts to the holding in *Tollett*. See *Helms v. State*, 484 S.W.2d 925, 926–27 (Tex. Cr.App.1972) (guilty plea "waives" most nonjurisdictional defects occurring before entry of plea). This judicially created rule is commonly known as the "*Helms* rule."

The *Helms* rule was not a judicially created rule for very long. In 1977 our Legislature effectively codified most of the *Helms* rule when, having the opportunity to abrogate this rule in its entirety, the Legislature made only a "limited abrogation" of this rule for negotiated guilty pleas under what is now Tex.R.App.Proc. 25.2(b)(3). See generally *Lyon v. State*, 872 S.W.2d 732, 734–35 (Tex. Cr.App.), cert. denied, 512 U.S. 1209, 114 S.Ct. 2684, 129 L.Ed.2d 816 (1994).

The Legislature's "limited abrogation" of the *Helms* rule and the legislative history of Rule 25.2(b)(3) clearly indicate an intent that our Legislature generally approves of the *Helms* rule and does not want this Court to be reversing convictions of guilty-admitting defendants on account of errors occurring before these admissions of guilt. The Court's decision is contrary to this clear legislative intent and it effectively overrules the *Helms* rule despite the Legislature's approval of this rule.[14]

The Court's opinion also says appellant's admission of guilt in open court does not "waive" any error in the admission of the evidence which appellant claims was illegally seized because appellant's testimony was "impelled" by the admission of this evidence and because appellant "sought to meet, destroy, or explain it by introducing [his] rebutting" testimony. See *Leday*, 983 S.W.2d at 718–720 ("impelled" testimony "exception" should not be subjected to a doctrine that a party waives an error in the admission of evidence by rising to rebut the evidence). *DeGarmo* does not violate the United States Supreme Court's "impelled testimony" jurisprudence announced in 1968 by *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

*Harrison* was a Fifth Amendment "fruit of the poisonous tree" case.[15] In *Harrison*, the

---

14. In addition, the main purpose of the legislative "limited abrogation" of the *Helms* rule was "to conserve judicial resources by encouraging guilty pleas" while also allowing defendants to appeal various issues without the necessity of a full-blown trial. See *Lyon*, 872 S.W.2d at 734–35. The Court's decision contravenes this purpose because it discourages pretrial guilty pleas and squanders judicial resources. The Court's decision accomplishes this by putting defendants who wait until trial to admit their guilt in a better position than defendants who formally plead guilty before trial and during trial.

For example, the Court's decision allows a defendant who waits until trial to admit his guilt to appeal issues that *Helms*, which the Legisla-

ture has approved, prohibits to a defendant who waits until trial to formally plead guilty without an agreed recommendation on punishment. Another example, the defendant who admits his guilt during trial does not have to get the trial court's permission to appeal while the defendant who pleads guilty pretrial with an agreed recommendation on punishment has to get the trial court's permission to appeal. Under the Court's decision, this latter defendant does not have much of an incentive to plead guilty pretrial. This contravenes the clear legislative intent upon which Rule 25.2(b)(3) is based.

15. This case is a Fourth Amendment "fruit of the poisonous tree" case.

Court decided the defendant's apparently untruthful guilt-innocence testimony[16] from a former trial was inadmissible during the prosecution's case-in-chief at the defendant's subsequent trial because this testimony was the "fruit of the poisonous tree" of or was "impelled" by three illegally obtained but noncoerced confessions that were introduced at the defendant's former trial. See *Harrison*, 88 S.Ct. at 2009–11 (defendant testified only after prosecution had illegally introduced into evidence three wrongfully obtained confessions and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony "impelled" thereby—"the fruit of the poisonous tree, to invoke a time-worn metaphor").[17]

*Harrison* and the other "exception" upon which the Court relies do not apply when a defendant, like appellant in this case, admits his guilt in open court to each element of the charged offense. In the "*Brady* trilogy" decided just two years after *Harrison*, the United States Supreme Court declined to extend *Harrison* to a defendant's admission of guilt in open court despite the dissenters' claims that *Harrison* controlled the disposition of those cases. See *McMann*, 90 S.Ct.

at 1453 (Brennan, J., dissenting) (*Harrison's* "reasoning" should apply; that is, "if the coerced confession induces a guilty plea, that plea, no less than the surrender of the self-incrimination privilege in *Harrison*, is the fruit of the State's prior illegal conduct, and thus is vulnerable to attack").

Justice Brennan's dissent in *McMann* also pointed out that one of the dissenters in *Harrison* concluded that " '[s]imilarly, an inadmissible confession preceding a plea of guilty would taint the plea.' " See *McMann*, 90 S.Ct. at 1453 fn. 4 (Brennan, J., dissenting). However, the Court rejected this position in *McMann*. See *id.* Therefore, appellant's admission of guilt in open court was not "impelled" by the admission of the evidence which appellant claims was illegally seized and later using this admission of guilt against appellant in the event of a retrial also would not violate *Harrison*.[18]

The Court's opinion also decides *DeGarmo* violates Article 38.23(a)'s policy that the jury "*should* decide the issues of fact about the legality of the State's evidence." See *Leday*, 983 S.W.2d at 719 (emphasis supplied). Article 38.23(a) expresses no such policy. Article 38.23(a) says the jury should decide these

**16.** Significantly the defendant's testimony at guilt-innocence in *Harrison* was not an admission of guilt to the charged offense. See *Harrison*, 88 S.Ct. at 2009.

**17.** When a defendant admits his guilt at punishment after a jury has rendered its verdict, it cannot be said the defendant's admission of guilt at punishment was "impelled" or "tainted" by the admission at guilt-innocence of other illegally obtained evidence. See *Harrison*, 88 S.Ct. at 2010–11. In these circumstances, *Harrison* simply has no effect or application to this Court's *DeGarmo* doctrine jurisprudence.

**18.** *Harrison* also was expressly limited to a defendant's testimony that was the "fruit" of illegally obtained confessions under the Fifth Amendment. See *Harrison*, 88 S.Ct. at 2010–11 fn. 9. Therefore, *Harrison* does not apply when a defendant testifies at guilt-innocence to overcome the impact of the admission of evidence which the defendant claims was seized in violation of the Fourth Amendment.

It also would appear that not much of *Harrison* has survived subsequent United States Supreme Court "fruit of the poisonous tree" decisions. For example, *Harrison* dealt with a defendant's testimony that was the "fruit" of noncoerced

confessions. See *Harrison*, 88 S.Ct. at 2009. However, the United States Supreme Court subsequently has decided that "fruits" of noncoerced confessions obtained in violation of "prophylactic" rules are admissible. See *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985); *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 2368, 41 L.Ed.2d 182 (1974); *Baker v. State*, 956 S.W.2d 19, 22–24 (Tex.Cr.App.1997).

Apparently *Harrison* now applies only to a defendant's testimony that is the "fruit" of a coerced confession that is obtained in actual violation of the Fifth Amendment by methods such as torture or other means that would cause an innocent person to confess. See *Elstad*, 105 S.Ct. at 1297 (if prosecution has actually violated a defendant's Fifth Amendment rights by introducing an inadmissible coerced confession at trial, compelling the defendant to testify in rebuttal, the rule announced in *Harrison* precludes use of that testimony at retrial); *Baker*, 956 S.W.2d at 22 (fruits of defendant's statement suppressed only when statement obtained through actual coercion). Any of this Court's cases extending *Harrison* beyond this context gives *Harrison* a more generous reading than it deserves. See *Leday*, 983 S.W.2d at 718 (and cases cited therein). Today, the defendant in *Harrison* would lose.

issues only "where the legal evidence raises an issue" thereunder and the defendant properly requests the jury to decide the issue.

And this brings us to the crux of what appellant essentially argues in this case. His argument essentially boils down to he had to admit his guilt in open court in order to place the issue "about the legality of the State's evidence" before the jury. He claims that under these circumstances it is unfair to hold him to his admission of guilt in open court because the Fourth Amendment violation motivated his decision to testify.

For the reasons already stated this does not render involuntary appellant's decision to admit guilt in open court. In addition, appellant did not have to surrender altogether his Fourth Amendment claim in order to assert his Fifth Amendment right to remain silent at trial. See *Nelson v. State*, 765 S.W.2d 401, 403 (Tex.Cr.App.1989). A defendant may pretrial take the stand and testify for the "limited purpose" of preserving for appeal a Fourth Amendment claim with no danger that this testimony will be used against him at trial. See *id.*[19] In any event, the whole point of *Jackson v. Denno* was that juries cannot be trusted to fairly decide these issues anyway. See *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 1777–91, 12 L.Ed.2d 908 (1964) (New York state rule, that, if factual dispute existed as to voluntariness of a confession, trial court had to submit the issue to the jury, violated Fourteenth Amendment), and 84 S.Ct. at 1793–1805 (Black, J., dissenting) and at 1805–07 (Clark, J., dissenting) and at 1807–14 (Harlan, J., dissenting); *State v. Ibarra*, 953 S.W.2d 242, 252 (Tex.Cr.App.1997) (McCormick, P.J., dissenting).

To summarize, a defendant's admission of guilt in open court should be treated like a guilty plea's resulting "waiver" of most complaints relating to deprivation of constitutional rights occurring before the defendant's admission of guilt. See *Tollett*, 93 S.Ct. at 1608. The Court's opinion decides a defendant's admission of guilt in open court has no such effect because the defendant's decision to testify is not "voluntary." However, the defendant's decision to testify though maybe a difficult one is nevertheless voluntary. See "*Brady* trilogy" of cases. The United States Supreme Court's decision in *Harrison* and Article 38.23(a) are not to the contrary.

Finally, the Court's opinion fails to deal with the issue of *stare decisis* which should be a significant consideration in this case. See generally *Awadelkariem v. State*, 974 S.W.2d 721, 725 (Tex.Cr.App.1998) (discussing various factors to consider in deciding whether to overrule precedent). In overruling *DeGarmo*, the Court's opinion does collateral damage such as upsetting the delicate balance struck by Rule 25.2(b)(3) and cases such as *Helms* which our Legislature generally has approved.

Moreover, *DeGarmo's* basic rule produces consistent results and strikes a proper and delicate balance between the competing interests. It has not produced "unfair" results. It does not violate the federal constitution. Texas courts have applied it for approximately fifteen years with no legislative action taken to overrule it. To the contrary, legislative action in this area of the law indicates legislative approval of *DeGarmo*.

The Court's decision will require appellate courts to address numerous claims the vast majority of which will have no merit. If a defendant's admission of guilt in open court is to have any significance at all, the Court sooner or later will have to draw the line somewhere in other cases on what claims are "waived" and what claims are not "waived" by a defendant's admission of guilt in open court. For example, does a defendant's complaint about the admission of hearsay fall within the Court's decision today? And, practically under the Court's opinion today a defendant has little incentive to plead guilty before trial and little, if anything, to lose

---

19. This is another rule which strikes a delicate balance between the competing interests. This rule obviously is intended to avoid placing a defendant in a position of having to choose between altogether abandoning a Fourth Amendment claim or abandoning his Fifth Amendment right to remain silent at trial. See *Nelson*, 765 S.W.2d at 403. This rule permits a defendant both of these options. See *id.* The defendant is not required to take the stand and testify at trial for the purpose of preserving a Fourth Amendment claim.

from taking the stand during trial and either admitting his guilt or committing perjury. I believe the Court has decided to overrule precedent "lightly." See *Awadelkariem*, 974 S.W.2d at 725.

The Court's opinion turns a defendant's voluntary admission of guilt in open court into an insignificant event contrary to the criminal justice system's basic purpose of ascertaining the truth. The rule announced in this case so improperly shifts the balance in favor of criminal defendants and against the legitimate interests of law-abiding citizens that I strongly urge the Legislature to abrogate or overturn it in its entirety.

I respectfully dissent.

KELLER, J., joins this dissent.