# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00645-CR

**Lynda Null Herron, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 32051, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Lynda Null Herron guilty of murder and assessed her punishment at thirteen years' imprisonment. *See* Tex. Penal Code Ann. § 19.02 (West 2003). In a single point of error, appellant contends that the trial court erred by overruling her motion to suppress statements she gave to the police. Finding that this contention was not preserved for review, we overrule the point of error and affirm the conviction.

At about 7:00 a.m. on June 10, 2005, officers from the Burnet County Sheriff's Department were dispatched to the residence appellant shared with her husband, Maxie Herron, in Deer Springs. The officers found Maxie lying in bed with a fatal gunshot wound to his head. Lying near him in the bed was a .22 revolver. Appellant had a minor gunshot wound to her right calf. Appellant told the officers that she had been shot while attempting to take the revolver from her husband, and that he had then shot himself.

On the morning of June 15, appellant voluntarily went to the sheriff's office where she was interviewed by officers Aaron Koch and Henry Nolan. The entire interview was videotaped. The interview began with the officers advising appellant of her rights. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (West 2005). Appellant then gave an account of the incident that was substantially similar to the one that she had given to the officers at the scene. Appellant said that as a result of a stroke, Maxie periodically had seizures during which he was mentally disoriented and physically unstable. He had been in such a state for two days when, on the morning of the incident, he started to walk outside carrying his .22 pistol. Appellant tried to stop him and to take the weapon from him. They struggled on the front porch, and appellant was accidentally shot. Appellant led Maxie back to the bedroom where, still holding the firearm, he sat down on the bed. Appellant said that she then got into bed, hoping Maxie would put down the pistol and do the same. She said that she felt Maxie get into bed, then heard the second shot.

As the interview continued, Koch and Nolan challenged appellant's account, telling her that it was inconsistent with the physical evidence.[1] About an hour and fifteen minutes after the interview began, appellant changed her story. In her new account, appellant said that after she was shot on the porch, she managed to get Maxie back into bed. Standing beside the bed, she again tried to take the pistol from him and he continued to resist. When appellant finally managed to wrest the revolver from Maxie's hand, it discharged accidentally and he was shot in the head. At this point in the interview, the officers again advised appellant of her rights and asked her to write out a

[1] The blood evidence did not support appellant's claim that she had been shot while standing on the porch. Also, the location of the gunshot wound to Maxie's head was incompatible with it being self-inflicted.

2

statement. Left alone in the interview room, appellant spent the next forty-five minutes writing a statement repeating the account that she had just given to the officers.

Koch and Nolan resumed their questioning after appellant signed the written statement. The officers began to more aggressively challenge the truthfulness of appellant's account of the incident, telling her that her new story was still inconsistent with the evidence. Eventually, appellant gave the officers her final account of the shooting. She said that when Maxie started to walk outside with the pistol, she stopped him and returned him to bed. Then, she took the revolver from him and shot him in the head. After this, she accidentally shot herself in the leg. The interview (including the time appellant was alone in the interview room) ended three hours and twenty minutes after it began.

Appellant moved to suppress both the written statement and the videotape of the interview urging, among other things, that her statements to the officers were involuntary. At the hearing on the motion, appellant offered the testimony of Dr. Matthew Ferrara, a forensic psychologist with expertise in interrogation who had both interviewed appellant and reviewed the videotape of the questioning. Ferrara opined that Koch and Nolan "did a proper job" and that they had not been "terribly coercive." Nevertheless, Ferrara was of the opinion that appellant's statements became unreliable as the questioning went on because she was a highly suggestible person. Ferrara said that when appellant was challenged by the officers, she simply changed her story so as to conform to their assertions. In effect, Ferrara said that appellant would have adopted any version of the events suggested by the officers.

3

In a careful and comprehensive five-page written order overruling the motion to suppress, the trial court stated that it "does not find any evidence of 'official coercion' and does not believe the Defendant's will was overborne based on the 'totality of the circumstances.'" Appellant challenges this conclusion, urging that her statements to the police were not "freely and voluntarily made without compulsion or persuasion." *See* Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). Appellant also contends that after she gave her written statement, what had been a voluntary interview became custodial interrogation, and that the officers should have again advised her of her rights before continuing their questioning.

When appellant's written statement was offered in evidence by the State at trial (State's exhibit 9), appellant's counsel stated that he had no objection. By so stating, counsel waived any error in the trial court's overruling of the motion to suppress and forfeited the right to complain on appeal that the statement was erroneously admitted. *James v. State*, 772 S.W.2d 84, 97 (Tex. Crim. App. 1989). Moreover, after saying that he had no objection to the written statement, defense counsel requested that "the entire videotape statement be introduced" pursuant to evidence rules 106 and 107. *See* Tex. R. Evid. 106 (remainder of statement), 107 (optional completeness). The videotapes of the full three-and-a-half hour interview were introduced in evidence as defense

exhibits 20A and 20B and played for the jury.[2] Appellant cannot assert that it was error to admit the videotaped interview at trial because it was she who offered it in evidence.[3]

The point of error is overruled and the judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:   September 26, 2008

Do Not Publish

---

[2] In its brief, the State points out that this was appellant's second trial; the first trial ended with a hung jury.  The State suggests that having achieved such a result at the first trial, in which the written confession and video were also admitted, trial counsel may have believed that the best trial strategy was to let the jurors see this evidence.

[3] Appellant urges that her offer of the videotaped interview should not be deemed a waiver because it was offered only to clarify or give a more complete understanding of the written confession.  We understand appellant to be invoking the principle that error in the admission of evidence is not waived when the opponent of the evidence seeks to meet or explain it.  *See Leday v. State*, 983 S.W.2d 713, 719 (Tex. Crim. App. 1998).  In this case, however, appellant had already waived any error with regard to the motion to suppress her written statement by stating that she had no objection to its admission in evidence.