Opinion issued October 30, 2008












 





In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00742-CR






NATHANIEL THOMAS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 182nd District Court 

Harris County, Texas

Trial Court Cause No. 1094964






MEMORANDUM OPINION 

 A jury found appellant, Nathaniel Thomas, guilty of the offense of sexual
assault (1) against his daughter, P.C., and assessed his punishment at 20 years in prison
and a $10,000 fine. In two issues, appellant contends that the trial court abused its
discretion by admitting into evidence the testimony of P.C.'s therapist and the
therapist's treatment records. 

 We affirm.

 Background


 In September 2005, when she was 17 years old, P.C. made an outcry to her aunt
that appellant had been sexually abusing her since she was 12 years old. The aunt
contacted P.C.'s mother, who reported the abuse to P.C.'s school. The school
reported the abuse to the Baytown Police Department. Appellant was later indicted
for sexually assaulting P.C. 

 At trial, P.C. described appellant's abuse over the years in graphic detail.
Appellant also testified at trial. He denied that he had ever sexually abused P.C.

 Appellant defended himself at trial by contending that P.C. had fabricated the
abuse allegations to retaliate against him for being unfaithful to P.C.'s mother, for his
strict discipline, and for his punishment of P.C. for running up a large cellular
telephone bill. The jury ultimately believed P.C. and found appellant guilty of sexual
assault. The jury then assessed the maximum penalty for sexual assault: 20 years in
prison and a $10,000 fine. (2) 

Admission of Therapist's Testimony and Records


 In his first issue, appellant contends that the trial court abused its discretion by 
admitting the testimony of P.C.'s psychological therapist, Linda Thompson, whom
the State offered as an expert witness. Appellant objected that Thompson lacks the
qualifications to testify as an expert in this case. Appellant also raised a hearsay
objection to Thompson's testimony. Appellant argued, contrary to the State's
assertion, that the medical treatment and diagnoses exception to the hearsay rule does
not apply to Thompson's testimony. See Tex. R. Evid. 803(4). 

 Thompson's objectionable testimony can be divided into two categories: (1)
expert testimony that P.C.'s symptoms of sleep disturbances, social withdrawal,
flashbacks, and feelings of low self-worth are "classic symptoms" of sexual abuse and
(2) hearsay testimony in which Thompson repeated to the jury the details of what P.C.
had told her during therapy about the sexual abuse. 

 In his second issue, appellant challenges the admission of certain of
Thompson's treatment records, comprised of worksheets completed by P.C. The
records reveal P.C.'s inner feelings and thoughts regarding herself and appellant. 

 Even if we assume that the trial court abused its discretion by admitting
Thompson's testimony and the treatment records, we will not reverse the judgment
if the error was harmless. See Tex. R. App. P. 44.2(b). More precisely, we will not
reverse a trial court's judgment based on the erroneous admission of evidence unless
the error affects a substantial right. Id.; Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998). A substantial right is affected when the error has a substantial and
injurious effect or influence in determining the jury's verdict. See King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). Stated conversely, a substantial right is not
affected by the erroneous admission of evidence "if the appellate court, after
examining the record as a whole, has fair assurance that the error did not influence
the jury, or had but a slight effect." Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim.
App. 2002). An improper admission of evidence is not reversible error if the same
or similar evidence is admitted without objection at another point in the trial. Leday
v. State, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998); see Duncan v. State, 95
S.W.3d 669, 672 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd) (holding improper
admission of outcry testimony was harmless error because similar testimony was
admitted through complainant, pediatrician, and medical records).

 Appellant contends that he was harmed by the admission of Thompson's
testimony and the treatment records because they served to bolster P.C.'s
credibility--the key issue in this case. Appellant points out the State referenced the
treatment records in its closing argument to show that P.C. had been attending therapy
since her outcry and to reveal, as argued by the State, "the life of a victim." The State
also argued that the records show that P.C. has "a good heart and morals" and that she
is a person of religious faith. In its summation, the State also referred to Thompson
as "a really great witness." The record further shows that the State mentioned in its
opening statement that Thompson would testify that P.C. exhibited classic symptoms
of an abuse victim. 

 In conducting our harm analysis, we note the following:


 P.C. testified without objection regarding the sexual abuse she endured over
the years. P.C.'s testimony was much more detailed and graphic than
Thompson's testimony and provided a chronological history of the abuse. In
contrast, Thompson's testimony regarding what P.C. had told her omitted many
of the details that P.C. related during her testimony. 

 P.C. testified regarding her therapy with Thompson. She told the jury at the
July 2007 trial that she had been seeing Thompson every two weeks since
October 2005. P.C. also testified that she had suffered from low-self esteem,
but that Thompson was helping her recover.

 P.C. also related to the jury her feelings regarding appellant and the abuse.




 Detective C. Rymer of the Baytown Police Department, testified that he
interviewed P.C. about the abuse allegations. Detective Rymer stated that P.C.
told him that the abuse had occurred over a five-year period and provided him
with a detailed, chronological account of the abuse. 

 Dr. Ferria Pereira, a physician at the Texas Children's Hospital and the
Children's Assessment Center also testified. Dr. Pereira told the jury that she
had examined P.C. following the outcry. Dr. Pereira testified, without
objection, regarding what P.C. had told her during the exam. According to Dr.
Pereira, P.C. reported that appellant began sexually abusing her when she was
12 years old and had last abused her a few days before the exam. Dr. Pereira
told the jury that P.C. reported that appellant had touched her "outside her
vagina" with "his penis, his finger, and his tongue." Dr. Pereira related that
P.C. had told her that appellant had sexually abused her more than 400 times. 

 Dr. Pereira also testified that her examination of P.C. revealed abrasions
around P.C.'s hymenal ring that were consistent with the reported abuse. 

 Testimony was introduced that, one year before she made her outcry to her
aunt, P.C. had told her younger cousin that appellant had been sexually abusing
her.

 P.C.'s mother, Felicia, testified that before the outcry, she had observed
appellant staring at P.C. in a sexual manner. Felicia told the jury that she
recalled that appellant made P.C. fetch him a beer while P.C. was only wearing
a towel. Felicia also testified that, at the time of the outcry, she had looked at
P.C.'s genitalia and observed that one area looked red and swollen. Felicia
further testified that P.C. slept a lot and seemed depressed. Felicia stated that
she and P.C. both attend therapy with Thompson every two weeks. She
testified that it is difficult for her to pay Thompson. At the time of trial, she
owed Thompson $400. Nonetheless, they continue therapy because it has
helped P.C.

 The defense cross-examined P.C. and the State's witnesses extensively.

 Both P.C. and appellant testified at trial, allowing the jury to observe each and
make a credibility assessment.

 Although it mentioned Thompson and discussed the treatment records in its
closing argument, the State also relied on the evidence discussed above and
emphasized evidence showing appellant's lack of moral character in general. 



 In sum, a review of the record shows that the effect of the complained-of
evidence was muted by other evidence introduced by the State that was either similar
to the complained-of evidence or which served to corroborate P.C.'s testimony. 
Stated more simply, the State presented overwhelming evidence of appellant's guilt,
aside from the complained-of evidence. After examining the record as a whole, we
have a fair assurance that the alleged errors did not influence the jury, or had but a
slight effect. See Motilla, 78 S.W.3d at 355. Accordingly, we hold that any error in
admitting the complained-of evidence was harmless. See Tex. R. App. P. 44.2(b).

 We overrule appellant's first and second issues.

Conclusion


 We affirm the judgment of the trial court.





 

 Laura Carter Higley

 Justice


Panel consists of Chief Justice Radack and Justices Nuchia and Higley.


Do not publish. See Tex. R. App. P. 47.2(b). 
1. See Tex. Penal Code Ann. § 22.011 (Vernon 2003). 
2. Tex. Penal Code Ann. § 12.33 (Vernon 2003); Tex. Penal Code Ann. § 22.011(f)
(Vernon 2003).