

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-08-309-CR**

CLAUDE FREDERICK LANE                                                      APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1] ON
## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

------------

Pursuant to rule of appellate procedure 50, we have reconsidered our previous opinion upon reviewing Appellant Claude Frederick Lane's petition for discretionary review.[2] We withdraw our March 11, 2010 opinion and judgment and substitute the following.

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. R. App. P. 50.

A jury convicted Appellant of two counts of sexual assault, found the sexual offender notices true, and assessed Appellant's punishment at life imprisonment. The trial court sentenced him accordingly. In three points, Appellant contends that the trial court erred by admitting hearsay, that the procedure in returning the verdicts at the guilt stage rendered them ambiguous and inconsistent, and that he was deprived of effective assistance of counsel. Because we hold that the trial court did not reversibly err and that Appellant has not met his burden of proving ineffective assistance of counsel, we affirm the trial court's judgment.

In his first point, Appellant contends that the trial court erred by admitting hearsay testimony concerning statements made to a nurse by the complainant. To preserve error, a party must continue to object each time the objectionable evidence is offered.[3] A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.[4]

The nurse testified as follows,

Q.	And what's the first thing you do after you get her consent or what's—what's the first thing you did after you got her consent?

A.	The next thing that I do is I get their history. I have them tell me in their words what happened.

---

[3] *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied,* 528 U.S. 1026 (1999).

[4] *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

Q.    What is the purpose of having them tell you what happened?

A.    It's so that we can form a nursing diagnosis so that we can medically treat them. That way they're—we know where to look for injuries.

Q.    And you use this statement that people give you then for the purposes of your medical treatment and diagnosis?

A.    That's correct.

Q.    And also to know what to be looking for during your exam?

A.    Correct.

Q.    Okay. And what did she tell you with regards to her history in the statement she made?

A.    She said that—that he said there was puppies in the garage. My eyes were not dilated enough to see in the dark. There was a light at the end, in a room, and he said the puppies are in there.

[Defense Counsel]:    *I'm—I'm going to object to this, Your Honor. If—if this—I'm going to object to it because it wasn't made—those statements weren't made—*

THE COURT:    I'm sorry, I can't hear you.

[Defense Counsel]:    *I'm going to object to them as not made for the purpose of diagnosis.*

THE COURT:    *All right. That's overruled.*

THE WITNESS:    *Okay. In the room, he said the puppies are—are in there. He grabbed my neck and he let go and he pulled my hair back. He pulled my arm backwards. He made me undress myself. He told me to get on my hands and knees and he pushed my face to the floor and stuck his tongue on my butt and told me to*

3

*play with myself. Then he made me suck his dick. Then he hit me in the face.*

*Then he opened up wine. He opened up the wine with a screwdriver. He made me open it and told me not to pull any shit with it. That he made me stick my ass in the air and he grabbed me around my mouth and I could not breath[e]. I was—he was licking me everywhere and stuck his tongue in my anal. He sucked my titties and made me suck his dick. He made a phone call on my cell phone. I was asking for cigarettes and wine so I knew where he was. I kept asking so I knew where he was—I'm sorry.*

*I kept asking questions. I grabbed my purse and my phone and dove out the window when he went outside the door.*

Q.     . . . Now, after she gives you this statement, what out of this statement do you use to conduct your evaluation?

A.     It would indicate where to look for injuries, like if she were shoved or grabbed, anything like that. If—what contact there was made, skin to skin, so that I would be able to look for injuries, as well as collect evidence.

Q.     Now, is there also—after they—after she gave you the patient history, did you also go through kind of a laundry list of questions for her?

A.     Yes.

Q.     *And in that list of questions, did you ask if—if she—if—if the Defendant performed oral sex on her?*

A.     *Yes.*

Q.     *And what did she indicate?*

A.     *She said yes.*

4

*Q.* *And did you ask if she performed oral sex on the Defendant?*

*A.* *Yes.*

*Q.* *And what did she indicate?*

*A.* *She said yes.*

*Q.* *Did you ask her if he performed oral sex by contacting her anus?*

*A.* *Yes, I did.*

*Q.* *And what did she indicate?*

*A.* *She said yes.*

*Q.* *And did she also indicate that—that he had touched her genitals and that she had touched his genitals?*

*A.* *Yes, she did.*

*Q.* *Did she indicate whether or not the Defendant ejaculated?*

*A.* *She said no.*

*. . . .*

*Q.* *Did she describe for you where the assault had occurred?*

*A.* *Yes, she did.*

*Q.* *What did she tell you?*

*A.* *She said in the assailant's mom's garage.* [Emphasis added.]

Appellant lodged only his initial objection and never asked for a running objection.

Further, as Appellant concedes, the nurse's testimony regarding the complainant's

statements was cumulative of the complainant's own testimony.  We overrule

Appellant's first point.

In his second point, Appellant contends that the trial court violated article

37.04 of the code of criminal procedure by sending the jury back to the jury room to

"redo" the verdicts.  Article 37.04 provides,

> When the jury agrees upon a verdict, it shall be brought into court by
> the proper officer; and if it states that it has agreed, the verdict shall be
> read aloud by the judge, the foreman, or the clerk.  If in proper form and
> no juror dissents therefrom, and neither party requests a poll of the jury,
> the verdict shall be entered upon the minutes of the court.[5]

But article 37.10(a) provides,

> If the verdict of the jury is informal, its attention shall be called to it, and
> with its consent the verdict may, under the direction of the court, be
> reduced to the proper form.  If the jury refuses to have the verdict
> altered, it shall again retire to its room to deliberate, unless it manifestly
> appear that the verdict is intended as an acquittal; and in that case, the
> judgment shall be rendered accordingly, discharging the defendant.[6]

And in *Reese v. State*, the following occurred:

> The record reflects apparent confusion among the jurors as to
> the verdict forms.  Upon returning to the courtroom, the jury announced
> they had reached a verdict.  The trial court noticed that only the verdict
> form in the sexual assault case had been signed by the jury; they had
> neglected to return any verdict in the compelling prostitution case.  The
> trial court informed the jury that "You forgot to sign a verdict on one and
> all the jury needs to go back in there a minute".  The jury again returned
> from deliberation having found appellant "guilty" of the compelling
> prostitution charge, but "not guilty" of the lesser included charge of
> prostitution.  The trial court admonished the jury as follows:

---

[5] Tex. Code Crim. Proc. Ann. art. 37.04 (Vernon 2006).

[6] *Id.* art. 37.10(a).

6

Well, sir, I am going to ask you to go back in there one more time and read the Court's Charge with regard to the offense of compelling prostitution and whether or not you consider the lesser-included offense of prostitution. I will have to ask that you go back there one more time.

We note that appellant did not object to the jury being sent back to deliberate at any time.[7]

In affirming Reese's conviction, the Texas Court of Criminal Appeals explained,

The second time the jury returned from deliberations, the trial judge found the forms to be in conflict and insufficient. Due to this conflict, the trial court not only had the power to send the jury back for further deliberations but it was his duty to do so. Appellant did not object to the jury being retired for further deliberation without any explanation from the bench, nor did he request a jury poll at any point. Once an unambiguous verdict for both offenses was returned, the trial court then read the verdicts aloud.

We hold that the trial judge was correct in sending the jury back for further deliberation, and did not err in the procedure employed in accepting the verdict.[8]

Similarly, in the case before us, the following proceedings occurred:

THE COURT: All right. Everybody but the foreman can be seated. And, Mr. Foreman, it's my understanding the jury has reached a verdict; is that correct?

THE FOREPERSON: Yes, Your Honor.

THE COURT: Was this unanimous by all members?

THE FOREPERSON: Yes, Your Honor.

---

[7] *Reese v. State*, 773 S.W.2d 314, 316 (Tex. Crim. App. 1989).

[8] *Id.* at 318 (citations omitted).

THE COURT:        If you'll present it to Ms. LaCroix, I'll read it. You may be seated. All right. Mr. Lane, let me ask you to stand.

As to Count 1, we, the jury, find the Defendant Claude Frederick Lane guilty of the offense of sexual assault as charged in Count 1.

And Count Two, we, the jury, find the Defendant Claude Frederick Lane guilty—

(A brief pause in proceedings.)

THE COURT:        I've been informed by my bailiff that the foreman is telling me that they signed the wrong—I'm sorry.

THE BAILIFF:      Count 1 only.

THE COURT:        Well, let me send you back to the jury room and I want y'all to redo your verdict forms and do them correctly if you can.

Appellant did not object or request to poll the jury. After returning again from the jury room, the jury returned unanimous verdicts of "not guilty" on Count One and "guilty" on Counts Two and Three, maintaining their verdicts when polled. The verdict form on Count One shows that the foreman signed both the guilty and the not guilty verdicts, but the signature in the blank for the guilty verdict is crossed through. Unlike the record in *Hay*,[9] a case on which Appellant relies, the record in the case before us shows that the trial court received information from the foreman via the bailiff that the verdict form on Count One was wrong. Further, while Appellant relies on the trial court's use of the plural "verdict forms" when sending the jury back to

[9] ▲ *Hay v. State*, 472 S.W.2d 157, 160 (Tex. Crim. App. 1971).

8

correct the verdict on Count One, we are not prepared to hold based solely on that language that the cautious trial court erred by giving the jury a chance to review all of the verdicts before accepting them. Following *Reese*, we hold that the trial court correctly sent the jury back for further deliberations and followed the correct procedures in accepting the verdicts.[10] We overrule Appellant's second point.

In his third point, Appellant contends that he was denied effective assistance of counsel by the election of the jury to assess punishment. To establish ineffective assistance of counsel, Appellant must show by a preponderance of the evidence that his trial counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.[11] Appellant contends that after defense counsel unsuccessfully fought to bar the State from questioning Appellant about his prior rape conviction should he testify at the guilt phase, no strategy supported the election of the jury for punishment, especially because that election allowed the State to refer to the sex offender enhancement paragraphs at jury

---

[10] *See Reese*, 773 S.W.2d at 318; *see also* Tex. Code Crim. Proc. Ann. art. 37.10(a).

[11] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

selection.  Appellant did not raise ineffective assistance of counsel below.[12]  Further,

he does not argue that the outcome of his trial would have been somehow different

had the trial court assessed his punishment.[13]  Accordingly, Appellant has failed to

satisfy his burden of proving ineffective assistance of counsel.  We overrule

Appellant's third point.

Having overruled Appellant's three points, we affirm the trial court's judgment.


LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 29, 2010

---

[12] *See Salinas*, 163 S.W.3d at 740 ("In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions.") (quoting *Mallett*, 65 S.W.3d at 63).

[13] *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *see also* Tex. Penal Code Ann. § 12.42(c) (Vernon Supp. 2009) (providing in relevant part that a person shall be imprisoned for life if convicted of sexual assault and having a previous conviction for aggravated sexual assault).