02-10-361-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND DISTRICT OF
 TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00361-CR

 

 


 
 
 CORY MAURICE LONG
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE
 STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I. Introduction

          In two points, Appellant Cory
Maurice Long appeals his conviction of four counts of aggravated robbery with a
deadly weapon.  We affirm.

II.  Factual and Procedural
Background

          The State charged Long with
four counts of aggravated robbery with a deadly weapon, alleging that he intentionally
or knowingly, while in the course of committing theft of property and with
intent to obtain or maintain control of said property, threatened or placed Summer
Thrush, Robert Evans, Jacob Davidson, and Taishona Carpenter in fear of
imminent bodily injury or death and used or exhibited a deadly weapon (a
firearm).

          During trial, the four
complainants testified that during a party at Evans and Davidson’s apartment,
Long and an accomplice stole property, including two computers, at gunpoint.  Long
testified that he sold Evans fake drugs and that Evans instructed him to hold
the two computers as security for payment; Long then sold the computers for
$500.  The jury convicted Long of four counts of aggravated robbery and
assessed his punishment at forty-five years for each count, and the trial court
entered judgment on the verdict.  This appeal followed.

III.  Sufficiency

          In his first point, Long
complains that the evidence is insufficient to support his conviction.

A.  Standard of Review

          In our due-process review
of the sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Isassi v. State, 330 S.W.3d 633, 638 (Tex.
Crim. App. 2010).  This standard gives full play to the responsibility of the
trier of fact to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.

          The trier of fact is the
sole judge of the weight and credibility of the evidence.  See Tex. Code
Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270 S.W.3d 564,
568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus,
when performing an evidentiary sufficiency review, we may not re-evaluate the
weight and credibility of the evidence and substitute our judgment for that of
the factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).  Instead, we Adetermine whether the necessary inferences are reasonable
based upon the combined and cumulative force of all the evidence when viewed in
the light most favorable to the verdict.@  Hooper v. State, 214 S.W.3d
9, 16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved
any conflicting inferences in favor of the verdict and defer to that
resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Isassi,
330 S.W.3d at 638.

B.  Evidence

          No one disputes the use of
alcohol and Ecstasy “tabs” at the party at Evans and Davidson’s apartment.  Evans
returned to the apartment around 2:30 a.m. on June 6, 2009, from a party where
he had been drinking.  Davidson, Thrush, and Carpenter, along with several
others, were there; some were drinking and some were taking Ecstasy.[2]

          Around 4:00 a.m., two men
who Carpenter, Thrush, Evans, and Davidson did not know and had never seen
before showed up at the apartment—a black man with dreadlocks and gold teeth or
a gold grill on his teeth, who was identified at trial as Long, and a white man
with a shaved head.  Davidson said that he let the two men into the apartment
because he assumed they knew someone at the party.

          The two men entered the
apartment, went straight back to Evans’s bedroom with Evans, and closed the
door.  Evans said that the men wanted to buy five Ecstasy pills if Evans had
any extra that he could sell to them.  Evans was going to sell the pills for
$10 each.  Evans sat down at his computer; when he turned around, Long pointed
a gun in his face.

          Long told Evans, who was
terrified, to give him all of his money; Evans had $250, and he gave it to Long
but said that he would not have if Long had not had a gun.  Long also asked for
the rest of Evans’s pills, and he told his accomplice to grab Evans’s $1,400
desktop iMac G5.  The accomplice left the room with the computer and then came
back inside and took Evans’s laptop iMac.

          Thrush went to Evans’s room
and tried to open the door.  She knocked, and Long opened the door and
“basically, like, told [her] to get in there and, like, threw [her] across the
room and told [her] to be quiet.”  He was holding a gun.  Carpenter stated,

[Thrush] went in.  The door shut.  I walked in after
her.  And as soon as I came in the room, I saw him and the other person that
was there, and they had a gun, and they told me to shut the door.  So
immediately—I’ve never even seen a gun before.  So I shut the door behind me.

 

Carpenter said that Long was holding
the gun and that she thought she was going to die.  Thrush said that Long
started rounding up everything—money, a computer, and drugs––and that she was
“absolutely terrified” and in fear for her life.

          Davidson said that he saw
the white man walk out with Evans’s laptop and that was when he wondered what
was going on.  Then Long came out with a gun in his hand and told everyone to
go into the room.  Davidson said that he was scared when he saw the gun and
that he thought he was in imminent danger of bodily injury or death.  He,
Carpenter, and the other party guests went into the room as instructed.  Long
told them to sit down, be quiet, take out their wallets, and take off their
pants and throw them to him so he could check everything while the accomplice
went through the apartment.

          Long left the bedroom and
used his cell phone to call someone “to bring the car around.”  When Long left
the bedroom, Thrush tried to shut the door.  Long came back in, shoved her to
the ground, and told all of them not to do anything stupid like that again.  The
robbers took an X-box 360, which belonged to Davidson, from the living room.  They
also took Evans’s Wii game console, the cable box for the television, and anything
else they could carry.  Davidson said that if the men had not had a gun, they
would not have let them take these items or Evans’s laptop and computer.

          After the robbery, one of
the party guests chased after the men in his underwear, trying to get a license
plate.  Thrush, Carpenter, Davidson, and Evans stayed around to wait for the
police and gave written statements.  The police arrived around 5 a.m.

          Evans punched two holes in
his bedroom wall because he was very angry.  He and Davidson talked about blaming
the damage to the wall on the robbers because Davidson did not want to pay for it,
but Evans said that he did not attribute the damage to the robbers in his
written statement.  Davidson acknowledged that he lied when he told the police
that the robbers had punched two holes in the bedroom wall and that Evans had
actually punched the holes because he was upset about the robbery.  He told the
police the robbers did it because he thought that if that was in the police
report, he and Evans would not have to pay for it.  Not long after the robbery,
he and Evans terminated their lease and had to pay a penalty.

          Evans said that he was
“sobering down” during the robbery but that he was still intoxicated and that
the only reason he gave the men his computer was because “they had a gun in
[his] face.”  During cross-examination, Thrush admitted that she had “a real
bad memory sometimes” and again admitted that she had been drinking that night
and taking Ecstasy.  Carpenter said she was sober by the end of the night and
completely sober “[b]y the time there was a gun in [her] face.”

          Evans testified that he subsequently
received an e-mail from a computer store, asking him whether he was missing any
computers.  Evans replied to the store’s email and went to the police with the
store’s information.

          North Richland Hills Police
Detective Enriqueta Garcia stated that she and Detective J.D. Smith, now
retired, recovered Evans’s two computers from Richland Computers.  Robert Calvey,
the store owner, and Justin Canada, a store employee, gave statements to her
and provided documentation to her regarding the sale of the computers,
including a copy of a cancelled check and a copy of the driver’s license of the
individual selling the computers—the driver’s license belonged to Long.

          The trial court admitted
State’s Exhibits 11 and 12.  State’s Exhibit 11 is the stipulation of Canada’s
testimony, which includes that on June 6, 2009, three men came into Calvey’s
store to sell a MacBook and an iMac desktop, and a white male, Ian Davis,
claimed ownership and began filling out the paperwork.  Davis did not have a
driver’s license, so Long produced his driver’s license, from which a copy was
made.

          State’s Exhibit 12 is the
stipulation of Calvey’s testimony:  On June 6, three men came into his store to
sell a MacBook and an iMac desktop computer for $500.  Ian Davis began filling
out the sales form but could not produce valid identification, so Long gave his
driver’s license to Calvey.  Calvey issued a check to Long for $500, which Long
later cashed.  Calvey later found Evans’s contact information on the computer
and e-mailed Evans.  Evans contacted him about the property, and the computers
were released to Detective Smith.  Calvey provided copies of a check, Long’s
driver’s license, and the sales forms to the police.

          Detective Garcia assembled
a photo lineup using the photo from Long’s driver’s license, and she showed the
photo lineup to Thrush, Carpenter, Davidson, and Evans on June 16.  Thrush,
Carpenter, Davidson, and Evans all selected Long’s photo from the array.  Davidson
said he was 100% positive about his identification.  Evans said that he
instantly recognized Long’s face after spending thirty to forty-five minutes in
the bedroom with Long on the night of the robbery.  On June 16, Canada picked
Long out of Detective Garcia’s photo lineup.  On June 17, Calvey viewed the
same photo lineup and identified Long.  The trial court admitted all of the
photo lineups.

          Detective Garcia said that
as a result of her investigation, she secured an arrest warrant.  She also
testified that a handgun is a deadly weapon.  On cross-examination, Detective
Garcia agreed that if Evans had given the computers to Long, the computers would
not be considered stolen.

          Long testified that he had
been convicted in Louisiana of the felony offense of possession of a controlled
substance (cocaine) in September 2001 and of aggravated battery in May 2005.[3] 
In June 2009, he was employed driving Little Debbie trucks and sold Ecstasy
pills on the side.  On June 6, K-Love, a white “dude,” told him that somebody
wanted to buy pills from him, and he and K-Love went to the apartment to sell fifty
pills for $500.  Long explained the events of the evening, stating:

The only person I ever talked to was the dude or the
guy that said we went to his room.  I never talked to him on the phone.  It was
understood that he was supposed to buy 50 pills, because the person that called
me was a mutual friend of him [sic].  So that—I never really talked to him.

 

So that’s why when we come there, first we were
outside, but he’s like, Come inside.  That’s when he was supposed to be getting
the money for it.  When we get up in there, he say he don’t have the money
right now.  So I’m like, Did you make me come way from Dallas from this bull
crap?  That’s what I said.  He like, Hold on, then he asked me would I hold a
computer until then.  He offered me a laptop first.  I’m like, That ain’t
enough to cover these pills.

 

So he like—he got this whole
computer that his momma just got for him.  Just hold it for lagniappe until he
give me the money in the morning.  But honestly, the pills I had was fake
anyway, so I’m looking at him like, I’m winning.

Long said that although Evans gave
him the computers to hold, he sold them anyway.  Long also said that he did not
have a gun, did not point a weapon at anybody, did not tell anyone to take off
his or her pants, did not hit anybody in the head, did not throw a girl down,
and did not rob anyone.  Later that day, he and Ian Davis sold the computers
for $500 at Richland Computers.  Long cashed the $500 check.

          During cross-examination,
Long testified that he had never met Evans, Davidson, Thrush, or Carpenter
before that night and that the apartment had been full of people.  He said that
they must have accused him of robbery because they discovered that the pills
were fake.  K-Love helped him carry out the stuff from the apartment.  Long
said that the State’s witnesses lied about him having a gun and stealing
anything.  He said that Evans’s friends were being loyal by testifying about
the purported robbery.

C.  Analysis

          Long argues that the
evidence is insufficient because “the alleged eye witnesses were under the
influence of alcohol or a controlled substance which would impair their ability
to make a proper identification of the perpetrators.”  However, a witness’s intoxication
bears on his or her credibility, which is a matter reserved for the jury.  See
Cain v. State, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997); see also
Gilmore v. State, 822 S.W.2d 350, 351 (Tex. App.—Fort Worth 1992, no pet.)
(“Johnson’s state of intoxication on the date of the robbery certainly goes to
the weight to be given to his testimony.”).  Further, Long admitted that he was
present at the apartment that evening and that he left with Evans’s computers,
and he admitted to a history involving crime and violence.  In light of the evidence
set out above, we conclude that the jury could have found beyond a reasonable
doubt that Long intentionally or knowingly, while in the course of committing
theft of property, threatened or placed Thrush, Evans, Davidson, and Carpenter
in fear of imminent bodily injury or death while using or exhibiting a deadly
weapon.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi,
330 S.W.3d at 638; see also Tex. Penal Code Ann. §§ 29.02–.03 (West 2011)
(defining the elements of robbery and aggravated robbery).  We overrule Long’s
first point.

IV.  Hearsay

          In his second point, Long
complains that the trial court erred by overruling his hearsay objection during
Davidson’s testimony.

          During Davidson’s
testimony, the following occurred:

Q.  Who did you get the Ecstasy from?

 

A.  [Evans] got it from one of his friends, and we
were just getting it for the party.

 

          [Defense counsel]:  Objection to hearsay.

 

          THE COURT:  The question was:  Who did you
get it from?

 

          [Prosecutor]:  Yes.

 

          THE COURT:  Overruled.

 

A.  The actual—I got it from [Evans].

 

Q.  . . .  Okay.  So you got it from [Evans].  He’s
the one that had it?

 

A.  Yes, sir.

 

No objection followed the second time
the State asked who had the Ecstasy or had given it to Evans or Davidson’s
affirmative response that he obtained the Ecstasy from Evans.

          To preserve error, a party
must continue to object each time the objectionable evidence is offered.  Geuder
v. State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); Martinez v. State,
98 S.W.3d 189, 193 n.5 (Tex. Crim. App. 2003) (citing Ethington v. State,
819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); Fuentes v. State, 991
S.W.2d 267, 273 (Tex. Crim. App.), cert. denied, 528 U.S. 1026 (1999). 
A trial court’s erroneous admission of evidence will not require reversal when
other such evidence was received without objection, either before or after the
complained-of ruling.  Lane v. State, 151 S.W.3d 188, 193 (Tex. Crim.
App. 2004); Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). 
This rule applies whether the other evidence was introduced by the defendant or
the State.  Leday, 983 S.W.2d at 718.  Because the same evidence was
admitted without objection immediately after Long’s first objection, Long has
failed to preserve error.  See Tex. R. App. P. 33.1; Geuder, 115
S.W.3d at 13.  Therefore, we overrule his second point.

V.  Conclusion

          Having overruled both of
Long’s points, we affirm the trial court’s judgment.

 

                                                                             PER
CURIAM

 

PANEL:  MCCOY, GARDNER, and GABRIEL,
JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 5, 2012









[1]See
Tex. R. App. P. 47.4.





[2]Thrush
and Carpenter had gone to several parties together before going to Evans and
Davidson’s apartment, and Carpenter said that she was drunk when they got
there.  Thrush took a tab but did not drink any alcohol at the apartment.  She
said that she was not “too messed up” and still knew what was going on around her. 
Davidson testified that he did Ecstasy at the apartment that night.





[3]During
cross-examination, Long elaborated that he had been convicted of “possession
with intent, two aggravated batteries, disarming a police officer.”  He said
that the police officer said that Long took his gun but that he was not guilty
and that he ended up with a broken nose and injuries to his rib; the officer
sustained a broken hand.  In 2001, he was convicted of attempted possession of
a dangerous weapon (gun) while in possession of cocaine.  In 2003, he was
convicted of attempted possession of cocaine.